[No. 1678, January 9, 1915.]

STATE v. ANCHETA.

SYLLABUS BY THE COURT.

1. Where there is substantial evidence to support a verdict, the appellate court will not disturb it.

P. 26

2. In both civil and criminal causes, a party's fraud in the preparation or presentation of his case, such as the suppression or attempt to suppress evidence by the bribery of witnesses, can be shown against him as a circumstance tending to prove that his cause lacks honesty and truth.

P. 27

3. Evidence of the identity of the accused with the person who committed the theft, derived from a comparison of the foot tracks, is admissible.

P. 27

4. Errors must not only appear upon the face of the record, but must appear to be probably prejudicial.

P. 29

5. An order of the district court denying the motion for a change of venue will not be reversed by this court, unless the record shows an abuse of discretion, which, in this case, it does not.

P. 30

Appeal from District Court, Valencia County; M. C. Mechem, Judge.

Amado Ancheta was convicted of rape, and appeals. Affirmed.

EDWARD A. MANN, of Albuquerque, and
JAMES F. BICKERS, for appellant.

The verdict is founded on prejudice. The whole story is unreasonable.

The court erred in admitting testimony concerning the attempt made by appellant to bribe two witnesses. The charge of rape is easily made and the court should carefully guard the rights of the state and the accused.

Hubert v. State, 104 N. W. (Neb.) 276.

A witness for the state should not have been permitted to testify as to certain foot tracks, because he had no experience or knowledge which would enable him to speak intelligently and enlighten the court and jury.

5 Enc. Evidence, 530; Shouer v. Allerton, 151 U. S. 607; R. R. Co. v. Warren, 139 U. S. 348; N. Y. & C. M. Co. v. Fraser, 130 U. S. 611.

Declarations of prosecutrix in cases like this are admissible as a part of the res gestae.

33 Cyc 1463; Barnes v. State, 16 Am. St. R. 48; State v. Fitzsimmons 49 Am. St. R. (R. I.) 766; Costillo v. State, 37 Am. St. R. (Tex.) 794; People v. Figueroa, 66 Pac. (Cal.) 202; State v. Washington, 104 La. Ann. 57, 28 So. 904.

The application for change of venue was made in the statutory form. While the court may require oral examination of the supporting witnesses, the inquiry is limited to the interest of the witnesses.

Territory v. Leary, 8 N. M. 180, 43 Pac. 688; Territory v. Vialpando, 8 N. M. 211, 42 Pac. 64; Sec. 2881, C. L. 1897.

A statement concerning this question, in Territory v. Emelio, 14 N. M. 147, is dicta, and the opinion in Territory v. Gonzales, 68 Pac. (N. M.) 925 was based upon a rule.

The indictment is defective, in that it fails to charge that the defendant was over the age of fourteen years.

Sections 1090 and 1091, C. L. 1897; Hubert v. State, 104 N. W. (Neb.) 276; Schrauner v. People, 220 Ill. 16; Wistrand v. People, 213 Ill. 72; State v. Hall, 164 Mo. 528.

IRA L. GRIMSHAW, Assistant Attorney General, for the State.

No motion for a directed verdict was made and therefore appellant cannot be heard to complain for the first time in the appellate court that the evidence is insufficient to sustain the verdict.

U. S. v. Cook, 15 N. M. 124, 127.

It was incumbent on appellant to attack the sufficiency of the evidence in the trial court, and failing therein appellant is barred from making such attack in the appellate court.

People v. Crowley, 100 Cal. 478; Commonwealth v. Lafayette, 130 Mass. 130; Foley v. People, 22 Mich. 227; People v. Smith, 106 Mich. 431; Skinner v. State, 30 Ala. 524; Hubbard v. State, 72 Ala. 164; 12 Cyc 813; Clark v. State, 78 Ala. 474; Woodson v. State, 54 So. (Ala.) 191; Jones v. State, 57 So. (Ala.) 62; Pearson v. State, 59 So. (Ala.) 526; State v. Page, 57 Pac. (Kan.)

514; Younger v. State, 73 Pac. (Wyo.) 551; State v. Taylor, 132 Pac. (Oreg.) 713; People v. Scanlon, 117 N. Y. S. 57; People v. Fish, 125 N. Y. 136; State v. Ballew, 63 S. E. (S. C.) 688; State v. Secrest, 80 N. C. 331; State v. Glisson, 93 N. C. 506; Suggs v. Watson, 101 N. C. 188; State v. Brady, etc., 104 N. C. 737; State v. Leak, 156 N. C. 643; McDonnell v. U. S., 133 Fed. 293; Brina v. U. S., 179 Fed. 373; section 37, ch. 57, Laws 1907.

The testimony of the Indians as to the foot tracks was proper, such testimony not requiring expert knowledge.

Underhill Crim. Evid. 364, 400, 438; State v. Cooley, 140 Pac. 1111; 2 Wharton Crim. Evid., Sec. 936; Johnson v. State, 38 L. R. A. (N. J.) 373; People v. McCurdy, 68 Cal. 576; State v. Morris, 84 N. C. 756; Busby v. State, 77 Ala. 66; State v. Moelchen, 53 Ia. 310; People v. Barnnovich, 117 Pac. (Cal.) 572; Wilson v. State, 156 S. W. (Tex.) 204; Commonwealth v. Pope, 103 Mass. 440; Harris v. Ga., 84 Ga. 269; Liles v. State, 135 S. W. (Tex.) 1177.

The offer to prove what the child prosecutrix stated to a third person was properly denied. The child prosecutrix was an incompetent witness, being too young to understand the obligation of an oath, and the child being unfit to testify a statement made by her is too untrustworthy to be received.

Smith v. State, 41 Tex. 352; People v. Quong Kun, 34 N. Y. S. 260; Hornbeck v. State, 35 Amer. R. (Ohio) 608; State v. Meyers, 46 Neb. 152; Weldon v. State, 32 Ind. 81.

The declaration was not a part of the res gestae.
Underhill Crim. Evid., p. 117.

A prosecuting witness is not such a party to the record that his or her statements are admissible against the State.

State v. Yocum, 117 Mo. 622; State v. Hummer, 72 N. J. L. 328; Brown v. State, 127 Wis. 193.

Particulars of such conversation could not be received except upon cross examination.

Territory v. Maldonado, 9 N. M. 629.

No error in examining orally the persons who made affidavits to the motion for change of venue.

Sec. 2881, C. L. 1897; Territory v. Lopez, 3 N. M. 156; Territory v. Kinney, 3 N. M. 143; Territory v. Leary, 8 N. M. 180; Territory v. Gonzales, 11 N. M. 301; Territory v. Taylor, 11 N. M. 588, overruled by Territory v. Emilio, 14 N. M. 147; Territory v. Cheney, 16 N. M. 476.

The law does not require that the indictment allege that accused was over fourteen years of age.

Secs. 1090 and 1091, C. L. 1897. In all the cases cited by appellant the statutes make the age of the person committing the crime an essence of the crime.

## STATEMENT OF FACTS.

On September 1, 1913, the grand jury for the county of Valencia returned an indictment against the appellant charging him, in the first count, with having carnally known and ravished Maria Inéz Lucero,, a female under the age of 14 years, and, in the second count, with attempting to rape said Maria Inéz Lucero. On September 8, 1913, an application for change of venue was made by appellant and denied. Thereafter the trial was begun, and on September 9th the jury found the appellant guilty of the charge in the first count. The appellant was thereafter sentenced to 20 years in the penitentiary, and from such verdict and judgment of the court he appeals.

Because of an attack upon the sufficiency of the evidence, it is necessary to make a more complete statement of the facts than ordinarily would be necessary.

On the night of July 13, 1913, Filimonia Lucero, the mother of Maria Inéz Lucero, the girl upon whom the assault was made, her husband and two other children, aged one and nine years, respectively, retired to their one bed, which was made on the ground outside of the resi-

dence of the family, in the town of Cuerva, N. M. The nine-year-old daughter slept on the outside; next to her slept Maria Inéz, the little girl upon whom the assault was committed; the mother lay next to Maria Inéz; next to the mother lay the one-year-old daughter; and next to her lay the father. About 3 o'clock in the morning of the 14th of July, the mother reached over to where Maria Inéz had lain during the early part of the night, for the purpose of seeing that the girl was properly covered. The mother discovered that the girl was not in bed, but absent. Later, in the early morning, the six-year-old girl being still absent, friends and relatives were told of the incident, and a search for the missing girl was begun. This was about sunrise of that morning. Miguel Molina and José Maria Romero were summoned to the Lucero house, and they found large barefoot tracks leading from close to the house. They followed these tracks for some distance. Then the tracks took the appearance of shoe tracks. The witnesses stated that the person whom they were tracking had put on his shoes. The tracks led to some further distance and to a cedar tree. Under the tree the ground looked like it had been freely trampled, and a little pool of blood was seen there by the witnesses. The larger tracks led eastward from the cedar tree, and the smaller tracks led towards the north. Molina and Romero then took up the smaller tracks and after going a short distance they came upon Maria Inéz Lucero, the missing girl, standing mute. The men took her in their arms and carried her to the Lucero house, the home of the child. When they arrived there the girl was in an unconscious condition. When found she was wearing only a short skirt. When put to bed the night previous she had other clothes on her body, including the little skirt. The girl was handed to the mother, who placed her in bed, and thereafter summoned a physician. The physician, and others found blood on the girl's legs and clothing. Blood was also flowing from the vagina. The doctor examined the child, and found that a penetration of the vagina had been effected, and that the hymen was ruptured. Ten days later the physician found an un-

natural discharge of matter from the vagina, which indicated that the child had "probably" an infection of gonorrhea, although the doctor was not sure that gonorrhea had set in, for he made no microscopical examination of the discharge to ascertain whether the gonococcus was present therein. When the little girl went to bed on the night of the 13th, she was in perfect health. All the tracks were in sandy soil, except at long intervals when a track or two was seen upon the rocks.

About 6 o'clock of the morning of the 14th of July, 1913, the appellant came to the house of a man named Sarracino, where José Carrillo was working, and called in a loud voice to another man working there. The appellant came close to José Carrillo and the latter saw two spots of blood upon the white shirt then worn by appellant. Between 12 and 1 o'clock of the night of July 13th, the appellant was seen within 200 yards of the house of Lucero.

Teodoro Bautista, a Laguna Indian, followed the foot tracks leading from the cedar tree eastward, and found that they then led to the stable of Narciso, then through a little alley into the road, and then to the house of this appellant. The Indian then went in search of the appellant, and later found him. Seeing blood spots on the shirt of the appellant, the Indian led the appellant close to a church, and there endeavored to pull the appellant's shirt up to find more blood, but this action was resisted. The appellant all this time was nervous, and his "chin trembled." The Indian then compared the new tracks made by the appellant in his walk to the church with those leading off from the cedar tree, and found them to be the same. The day following this incident the appellant had a conversation with the Indian, wherein he said to the Indian:

> "Here, brother, friend, you are my friend; if you don't tell the truth there in court, because you tracked me, I will pay you $10. Please do me the favor. When I get home, I will pay you more money; and now tell me how much you want."

A week previous to the date of the trial the appellant offered Miguel Molina, one of the witnesses for the state, $100 if he "would be in his favor."

The testimony, on the other hand, for the appellant was in the nature of an alibi. He testified that he was at a show until 9 or 10 o'clock, and that he went from there to the saloon of one D'Armond; that he was there with some other boys, and that he went from there to the house of Mrs. Baca, where he was stopping, and from there to the house of his uncle, Teofilo Sarracino; that he got up about 7 or 8 o'clock the next morning, and ate breakfast at his uncle's house; that he did not see the Indian, Bautista, until after he started to town that morning. The boys who were with him, Rodriguez Baca and Margarito Baca, corroborated his story up to the time they left him between 11 and 12 o'clock, and the uncle testified that he saw him in the house in bed about 1 o'clock in the morning, and that he saw him again when he got up in the morning about 7 or half past 7 o'clock, and that he ate breakfast with him; and it is in evidence that he had previously borne a good character, and had never been in trouble before. He was a married man, and had two children, but was not living with his family.

### OPINION OF THE COURT.

HANNA, J. (after stating the facts as above.)—Although numerous errors were assigned, most of them have been waived, and we will consider those presented for our consideration in the order in which they are referred to in appellant's brief; the first error being that there is not sufficient proof to sustain a verdict of guilty.

[1] This assignment presents a double aspect, as argued by appellant; his first contention being that there is a total failure of proof as to practically all the material allegations of the indictment. Because of this assignment we have set out the facts at length, and it is our conclusion, after reading the evidence as contained in the record as a whole, that there was substantial evidence, if believed by the jury, to support the verdict. It has been held on numerous occasions, not only by this court, but

by the territorial Supreme Court, that where there is substantial evidence to support a verdict the appellate court will not disturb it. State v. Padilla, 139 Pac. 143; State v. Roberts, 138 Pac. 208; State v. Eaker, 17 N. M. 479, 131 Pac. 489.

[2] The second aspect of this assignment, as presented by appellant, is based upon the alleged inadmissibility of the evidence of the two witnesses, Bautista and Molina, which was to the effect that appellant had attempted to bribe them. It is contended that this evidence, having gone to the jury over appellant's objection, undoubtedly tending to prejudice the jury against him, nevertheless did not tend to prove the offense charged against him, except as to a portion of the evidence of one of the witnesses which went to show that this witness had seen blood upon the shirt of the defendant. Further objection was made to the evidence of the witness Bautista on the ground that there was no attempt to qualify him as an expert witness, until after his testimony in chief, and upon the suggestion of the court. Upon the first phase of this question—namely, the evidence going to show an attempt to bribe—we believe it is a well-established rule of evidence, in both civil and criminal cases, that a party's fraud in the preparation or presentation of his case, such as the suppression or the attempt to suppress evidence by the bribery of witnesses, can be shown against him as a circumstance tending to prove that his case lacks honesty and truth. State v. Constantine, 48 Wash. 218, 93 Pac. 317.

[3] As to the objection that the Indian witness, Bautista, was not qualified as an expert, we are not disposed to agree that this evidence was of a character to be properly denominated as expert evidence. The witness merely detailed the facts which had come under his observation, and, aside from the fact that he identified the tracks which he followed as the tracks of the defendant, basing his testimony upon his subsequent observation of other tracks known to be those of the defendant, it cannot be said that his evidence in any wise assumed the character of expert testimony. And, as to the latter fact, we be-

lieve there can be no objection upon the grounds as stated. The opinion of the witness in this respect was based upon measurements of the different tracks, which were compared by the witness, for the purpose of ascertaining whether or not they corresponded with one another. It is laid down as a rule of criminal evidence that:

> "Evidence of the identity of the accused with the person who committed the theft, derived from a comparison of the foot tracks, is admissible." Underhill on Crim. Ev., p. 364.

The same author also says in the same work, at page 400, that:

> "The comparison of footprints proved to have been made by the prisoner with other tracks or footprints found near the scene of the homicide is relevant, if a doubt arises on the evidence which was the slayer."

The same author, at page 438, further says:

> "A witness who has measured the tracks of man or beast and compared his measurement with the footwear of the accused, or of a horse owned by him, may testify to the results and may state that, in his opinion, a correspondence exists in size and shape."

Mr. Wharton, in his work on Criminal Evidence (section 936), states that the weight of authority sustains the rule that the witness may always testify to the facts and circumstances of the footprints or tracks, but that the courts are about equally divided upon the question of whether or not the witness may express an opinion as to their identity.

In this case the witness testified the tracks were the same, which, of course, might be contended was, in effect, stating that the particular tracks at the scene of the crime were those of the defendant, as he was connected with the tracks made later, and which were used for the purpose of comparison. We fully appreciate the fact that great caution should be exercised in admitting evidence of this character, but we believe in this case the facts jus-

tify the admission of this particular evidence, and the evidence in question was more closely approximating evidence of the fact in question rather than the conclusion or opinion of the witness which might have required a showing of expert ability, and it was the only evidence, in our opinion, that could have been adduced to prove the fact. For this reason it bears some similarity to the case of State v. Cooley, recently decided by this court, and reported at 140 Pac. 1111, at 1118, 52 L. R. A. (N. S.) 230. As stated in that opinion:

> "The witness, in effect, describes the facts when he gives his opinion. It is his way of stating them. Such testimony is admitted from necessity. A witness can seldom give in detail all the points and particles which go to make up his belief, but he can characterize them."

So, in the present case, the witness characterized the tracks which were the subject of inquiry, and said that they were the same. He could not detail the circumstances which led him to believe that they were the same, and this evidence is admissible by reason of the necessity of the case, and because of the fact that the jury could not be informed upon the matter of the identity of the tracks except upon such evidence as this. We therefore are of the opinion that no error was committed upon this ground of the assignment.

[4] The next assignment of error urged by appellant is predicated upon the refusal of the trial court to allow the defendant to show by a witness, Demécio Baca, what the statement of the prosecutrix was immediately after she regained consciousness after the alleged offense. One of the grounds upon which error in this action of the trial court is predicated is that the statement was a part of the res gestae, but it is further contended that the alleged statement in question was admissible as independent evidence. In our opinion, there are several reasons why this assignment is not well taken. First of all, it cannot be seriously urged that this testimony was a part of the res gestae. The time of the crime is not definitely fixed, but it occurred at some hour during the night. The child was,

found some time after she was missed in the morning, and was returned to her home, additional time thereby elapsing which is not fixed or certain. At a later time after her return to her home, which by the witness referred to was said to be a very little while after, a question was propounded to the child by the aunt, who, it is alleged, asked her who took her from home. The answer to this question, which was excluded by the court upon the ground that the child was an incompetent witness, is the action upon which error is predicated. It does not appear from the record what the answer would have been had it been admitted, and, so far as the record discloses, the answer might have been that the defendant was the person who took her from home. In other words, there was no offer to prove any fact which would indicate that the defendant had been prejudiced by the exclusion of the testimony.

As stated by Mr. Elliott, in his work on Appellate Procedure, § 592:

"A ruling must appear by the record, and from the record it must be shown to be erroneous in the strict sense; that is, it must appear that the ruling was wrong, and that it probably so operated as to bring about a wrong final result."

In other words, the error must appear from the face of the record, and we believe it to be well established that errors must not only appear upon the face of the record, but must appear to be probably prejudicial. Harter v. Eltzroth, 111 Ind. 159, 12 N. E. 129.

We therefore conclude that this assignment of error is not well taken, as it does not appear that the defendant was prejudiced by the exclusion of the evidence in question.

[5] The third assignment of error presented for our consideration is predicated upon alleged error in the trial court's refusal to grant a change of venue. Appellant, in his affidavit, asserted a belief that he could not obtain a fair trial in Valencia county, by reason of prejudice of the inhabitants thereof against him, arising out of public excitement and local prejudice, which affidavit was

supported by ·the affidavit of two witnesses, who swore they
were disinterested and believed the matter alleged in the
affidavit ·of·· the appellant.    The court caused the testi-
mony: of the supporting witnesses to be taken, which re-
sulted :in a showing that they had heard some conversa-
tion. concerning· the case, and talk ˙that the defendant
ought to be punished, but did not know whether the ap-
pellant could obtain a fair trial in the county or not.
Whereupon the court denied the motion for a change of
venue.

It· is contended by appellant that the inquiry of the
court into the merits of the affidavits upon which the ap-
plication for· change of venue was based could only be
directed to· the interest of the witnesses, and that the
court was limited in its inquiry thus far.    It is argued
that there· is nothing in the statute (section 2881, C. I.
1897) that authorizes the court to inquire into the source
of knowledge of the witnesses; the only question before
the court being, Are the two witnesses supporting the af-
fidavit disinterested? it being contended that, if the court
so finds, the statute is fully complied with, and it is man-
datory upon the court to grant the change of venue.    This
question is ably discussed in the learned brief of the At-
torney General, and we do not desire to cumber this opin-
ion with a full discussion of the matter as presented
therein, believing it is sufficient to say that we consider
that the question is fully disposed of by the territorial
Supreme Court in the case of Territory v. Cheney, 16 N.
M. 476, 120 Pac. 335, where the court said:

> "The witnesses produced in support of the ap-
> plication should be examined in court, as to
> knowledge and interest, and, if the presiding
> judge is of the opinion that their testimony does
> not establish the grounds of the motion, he
> should ˙ deny it."

We also fully agree with the holding of the territorial
Supreme Court in the case last referred ˙to, which we be-
lieve to be applicable to the present case, that an order of
the district court denying the motion for a change of
venue will not be reversed by this court unless the record

shows an abuse of discretion, which in this case it does not.

For the reasons stated, we cannot hold that the assignment as to the denial of the change of venue is well taken.

The only remaining assignment of error urged by appellant in his brief is that the court erred in refusing to quash the indictment, and also in permitting the State to introduce testimony over defendant's objection, for the reason that no offense against the state was charged in the indictment. It is asserted that this indictment, being based upon sections 1090 and 1091 of the Compiled Laws of 1897, is defective, in that the indictment nowhere charged that the defendant was either over the age of 14 years or, being under that age, had the physical ability to commit the offense, which, it is insisted, were essential ingredients of the offense that it was incumbent upon the state both to allege and prove. Appellant cites in support of this assignment the case of Hubert v. State, a Nebraska case found in 74 Neb. 220, 104 N. W. 276, 106 N. W. 774, and the case of Schramm v. People, 220 Ill. 17, 77 N. E. 117, 5 Ann. Cas. 111, and also the case of Wistrand v. People, 213 Ill. 72, 72 N. E. 748, in which case the several courts held that proof of the defendant's age was necessary and material in order to establish the corpus delicti. It is to be observed, however, that the statutes upon which the several indictments in these cases were based were substantially different from that of ours, in that the element of age was an essential part of the statute. As in the Nebraska case, where the statute read, "Or if any male person of the age of eighteen years or upwards," etc., and in the Illinois statute, upon which both the Illinois cases were based, the statute read, "Every male person of the age of sixteen years and upwards, who shall," etc., necessarily the age of the accused must be specified in an indictment based upon either of these statutes. Our statute (section 1091) provides as follows:

> "No conviction for rape can be had against
> one who is under the age of fourteen years at
> the time of the act alleged, unless his physical

ability to accomplish penetration is proved as an
independent fact beyond a reasonable doubt."

Section 1090, C. L. 1897, which defines the crime of
rape, does not contain any limitation as to the age of the
person charged with the crime, as in the case of Nebraska
and Illinois statutes, but simply provides "that a person
perpetrating" shall be punished as therein provided. And
it was under this section of the statutes that the defend-
ant is accused by the indictment in question. If it should
appear at the trial that the accused was a person under
the age of 14 years, the provisions of section 1091 would
apply, and the statute in question might be urged in bar
of the conviction, should the evidence fail to prove the
physical ability as defined in the statute. It would also
be sufficient to say, in connection with this assignment
of error, that the point cannot now be raised for the first
time, not having been previously called to the attention
of the trial court during the progress of the trial.

The record, however, we desire to say, discloses that
the appellant was a married man, and the father of two
children, which would at least show that the assignment
was not meritorious in point of fact, if valid as a techni-
cal legal objection.

Finding no errors in the record, the judgment of the
trial court is affirmed; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

### SYLLABUS BY THE COURT.