<hr />

## STATE v. LEATHERWOOD.

[No. 2433.   Nov. 29, 1920.]

[Rehearing denied January 27, 1921.]

### SYLLABUS BY THE COURT.

1. Statutory provisions for the selection of jurors are usually construed by the courts to be directory, unless the contrary intent is clearly manifested by the statute, and, being directory, an immaterial departure from the method prescribed does not vitiate the trial or invalidate the jury.   P. 510

2. So long as the defendant in a criminal case is tried by a fair and impartial jury, he cannot complain of the fact that the trial court erroneously excused certain members of the regular panel from service. A court may put a legal juror off, and its action is without prejudice to the defendant if a legally qualified and competent juror is put on in his stead, but the court cannot allow an illegal juror to sit in the trial of the case.   P. 510

3. A peremptory challenge to a juror may be allowed by the court at any time before the jury is sworn to try the case, and the fact that the juror has been accepted by both parties does not preclude the court from thereafter, and before the jury is sworn, allowing one of the parties to exercise a peremptory challenge out of the order provided by statute.   P. 510

4. It is not proper for the court to give an instruction which may be abstractly correct as a matter of law where there is no basis for it in the evidence, nor is it proper for the court in instructing the jury to define rules of evidence. **Held** improper for the court to instruct as to when a statement made by the deceased, for whose murder the defendant is on trial, would be admissible or inadmissible in evidence, when there was no evidence in the case to the effect that the deceased had made a statement concerning the difficulty. P. 514

State v. Leatherwood, 26 N. M. 507.

Appeal from District Court, Mora County; Leahy, Judge.

Baylor Leatherwood was convicted of murder in the second degree, and he appeals. Reversed, and new trial granted.

J. LEAHY, of Raton, and C. W. G. WARD and S. B. DAVIS, Jr., both of East Las Vegas, for appellant.

Court erred with respect to selection of jurors. Chapter 93, Laws 1917; State v. Balles, 24 N. M. 16; Clinton v. Engelbrecht, 17 Wall. 434; Terr. v. Prather, 18 N. M. 195; Hildreth v. Troy, 101 N. Y. 234; Teat v. Land, 135 La. 782, 66 So. 199; People v. Murray, 85 Cal. 350, 24 Pac. 666.

After acceptance of a juror a peremptory challenge cannot be interposed. Com. v. Rogers, 7 Metc. (Mass.) 500; State v. Hays, 23 Mo. 287; Smith v. Brown, 8 Kan. 609; State v. Schufflin, 20 Ohio St. 233; Com. v. Marrow, 3 Brewst. (Pa.) 402; State v. Patton, 18 Conn. 166; Horbach v. State, 43 Tex. 242; State v. Anderson, 4 Nev. 265; Sparks v. State, 59 Ala. 82.

HARRY S. BOWMAN and N. D. MEYER, Asst. Attys. Gen., for the State.

Retention of discharge of jury is discretionary, and will be reviewed for abuse of discretion only. 16 R. C. L., p. 321; 1 Thomp. on Trials, 45, 147; State v. Hansford, 14 L. R. A. (N. S.) 548; State v. Duvall, 65 So. 904; L. R. A. 1916E, 1264; Hipple v. State, 191 S. W. 1150, L. R. A. 1917D, 1141; State v. Cooper, 82 S. E. 358, Ann. Cas. 1917D, 453; State v. Kellogg, 104 La. 580; Sec. 18, p. 93, L. 1917; People v. McLaughlin, 37 N. Y. 1005; Price v. State, 36 Miss. 531, 72 Am. Dec. 195; Andrews v. State, 174 Ala. 11; 56 So. 998, Ann. Cas. 1914, B. 760; State v. White, 19 Kan. 445, 27 Am. Reps. 137; People v. Lee, (Calif.) 81 Pac. 969; Logan v. United States, 144 U. S. 263; Glasgow v. Metropolitan St. Ry. Co., (Mo.) 98 S. W. 915.

Before a reversal for the excuse of a juror can be by reason of such action. State v. Rodriguez, 23 N. M. 167; State v. Duvall, 135 La. 710; 65 So. 904, L. R. A. 1916E, Pittsburg etc. Railway Co. v. Montgomery, 152 Ind. 1, 71 Am. St. Reps. 301, 319; McGuire v. the State of Mississippi, 37 Miss. 369, 376; People v. Durrant, (Calif.) 48 Pac. 75, 78; Glasgow v. Metropolitan St. Ry. Co., (Mo.) 89 S. W. 915, 1 Thompson on Trials, (2d Ed.) p. 45, p. 147.

### OPINION OF THE COURT.

ROBERTS, J. Appellant was convicted of the crime of murder in the second degree, and appeals.

The first two errors assigned relate to the petit jury. There had been a murder case tried immediately preceding the impaneling of the jury in the present case, which resulted in a verdict of acquittal. Five of the regular panel of the jury for the term sat in the trial of the case referred to. The court, after excluding all members of the regular panel from the courtroom, except the five who sat in the trial of that case, excused the five jurors from further service during the term, giving as a reason that the jurors either deliberately or willfully disregarded their oaths as jurors in the trial of the case referred to, or that they were too dense to serve as jurors. Five other jurors to take the places of the ones so discharged were selected pursuant to the provisions of chapter 93, Laws 1917.

The selection of the jurors for the trial of cases in the district courts is governed by the provisions of this act. By section 12 it is provided that the list of names drawn for the term "shall constitute the names for the regular venires for grand and petit juries," and that if there are extra names the list must be made up in the order in which the names are drawn, except as to such persons as are excused "for good cause shown to the court." Section 18 provides that no person shall be excused from service by the judge "except for good and sufficient

reasons.'' Because of these provisions appellant contended that the court was without power to discharge the five jurors mentioned, or any jurors, except ''for good and sufficient reasons,'' and that the reasons set forth were not sufficient to justify this action of the court.

[1] Statutory provisions for the selection of jurors are usually construed by the courts to be directory, unless a contrary intent is clearly manifest by the statute, and, being directory, an immaterial departure from the method prescribed does not vitiate the trial or invalidate the jury. The present act authorizes the judge of the district court to excuse jurors from service for good and sufficient reasons, but the court necessarily determines the sufficiency of the reasons justifying the discharge. But the authorities generally hold that, where a competent and impartial jury is secured in a criminal case, a conviction will not be reversed because of some inadvertent failure to comply with every directory provision of the jury law, in the absence of a showing of prejudice against the accused. 16 R. C. L. p. 290. And this rule was followed by this court in the case of State v. Rodriguez, 23 N. M. 156, 167 Pac. 426, L. R. A. 1918A, 1016. In that case the rule is stated as follows:

"No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause until he has been accepted and sworn. It is enough that it appear that his cause has been tried by an impartial jury. It is no ground of exception that, and against his objection, a juror was rejected by the court upon insufficient grounds, unless, through rejecting qualified persons, the necessity of accepting others not qualified has been purposely created."

[2] While the five jurors in question were excused, assuming for the sake of argument that they were competent and qualified, their places were taken upon the jury by five others equally as honest, competent, and qualified, and no prejudice could have resulted to the appellant. He had no vested right to be tried by those five jurors or to have them sit upon his panel. He did have the right to be tried by a fair and impartial jury,

and this right was accorded to him and no claim is made that the jury as finally selected was not composed of competent, qualified, fair, and impartial jurors. In fact, appellant had five peremptory challenges remaining when he accepted the jurors, and it is to be presumed that if objectionable jurors were at that time upon the panel he would have exercised his peremptory challenges.

Appellant cites and relies upon the case of Hildredth v. City of Troy, 101 N. Y. 234, 4 N. E. 559, 54 Am. Rep. 686, in which case the court erroneously excused 12 of the regular jury panel from the trial jury on the ground that as residents of the city of Troy they were disqualified. The appellate court held this to constitute reversible error. The contrary is held by the Supreme Court of Maine in the case of Snow v. Weeks, 75 Me. 105. The court said: .

"At plaintiff's request, the presiding judge excluded from the panel several jurors from the city of Rockland, upon the assumption that the city might have some interest, or the jurors some bias, in the result of the suit. It is denied by the defendant that such bias or interest existed. But it matters not whether it existed or not. It was a matter for the exercise of the discretion of the judge. To his ruling upon such a question exceptions do not lie. He may put off a juror when there is no real and substantial cause for it. That cannot legally injure an objecting party as long as an unexceptionable jury is finally obtained. It is quite a different question where a judge puts a juror upon the panel who cannot sit. He may put a legal juror off. He cannot allow an illegal juror to go on. Ware v. Ware, 8 Me. 29; Shea v. Lawrence, 1 Allen, 167."

In the case of People v. Searcey, 121 Cal. 3, 53 Pac. 360, 41 L. R. A. 157, the court said:

"The further fact that the judge excused certain of the venire for cause is not a matter for complaint on the part of the defendant. As to such matters the court's discretion is of the broadest. Defendant in this regard must be satisfied if he is tried by twelve qualified, competent jurors."

See, also, People v. Harris. (Cal. App.) 188 Pac. 65.

Many other cases might be cited on the proposition sustaining one view or the other. The Rodriguez Case committed this court to the doctrine that the defendant

could not complain of departures from a directory stat-
ute in the matter of selecting a jury so long as he was
tried by a fair and impartial jury. We see no reason
for departing from this view. Much that will be said
under the next proposition is equally applicable to this
question.

[3] After twelve jurors had been accepted by both
the state and the defendant, and just before the jury
was to be sworn to try the case, the state asked leave
of court to interpose a peremptory challenge to one of
the jurors theretofore accepted. The defendant objected
to the allowance of the challenge and over his objec-
tion the state was permitted to exercise the challenge.
Both parties at that time had unexhausted peremptory
challenges, the defendant having five remaining.

The exercise of peremptory challenges is regulated by
section 30, c. 93, Laws 1917. In criminal cases it pro-
vides that no defendant shall be required to exercise a
peremptory challenge as to any particular juror until
the state shall have finally passed upon and accepted
such juror. It will be observed that the court per-
mitted the state to challenge the juror contrary to the
provisions of this act. Just how the appellant was in-
jured by the allowance of the challenge is not apparent,
because a competent, qualified, and acceptable juror was
procured in the place of the juror excused. Much that
has been said under the first point discussed applies
with equal force to this proposition.

In many jurisdictions it is held that a peremptory
challenge may be allowed at any time before the jury is
sworn, and that the acceptance of the juror does not
prevent a subsequent peremptory challenge if the juror
has not been sworn, and that statutes regulating peremp-
tory challenges are directory and not mandatory. Many
authorities supporting this view will be found cited in a
note to the case of McDonald v. State, 172 Ind. 393, 88
N. E. 673, 139 Am. St. Rep. 383, 19 Ann. Cas. 763. Cases
sustaining the opposite view will also be found. One

of the best-considered cases we have found on the question is the case of Stevens v. Union Railroad Co., 26 R. I. 90, 58 Atl. 492, 66 L. R. A. 465. There a party was allowed more peremptory challenges than he was entitled to under the statute and the court, after a painstaking review of all the authorities, said:

"The cases to which we have last referred declare and affirm in this country, and at the present time, the same doctrine that prevailed in England in the past that the law is concerned rather with the fairness of the trial and the impartiality of the jurors than with the particular jurors who compose the jury and render the verdict."

The subject was exhaustively considered by Judge Lomax, speaking for the Supreme Court of Appeals of Virginia, in Clore's Case, 8 Grat. 606. There the eminent jurist points out the difference between overruling a proper challenge on the part of the defendant and sustaining an improper challenge on the part of the state. In the former case an improper juror is forced upon the defendant, while in the latter it is but the substitution of one qualified and competent juror for another. He further points out the absurdity of awarding the defendant a new trial because of an error in erroneously excusing a competent juror and substituting in his stead another equally as competent; that in the event a new trial is awarded it will be impossible for the defendant to reconstitute the jury and place upon it the one juror erroneously excluded; that all that could be accomplished by the new trial would be the trial of the defendant before a fair and impartial jury, which the defendant has already had.

The better-reasoned cases in our view uphold the doctrine that a party litigant has no vested right to be tried by any particular juror; he has a constitutional right to be tried by a fair and impartial jury; that statutes regulating the selection of the jury are directory and not mandatory; that, so long as a trial court adheres to the spirit of such a statute, an immaterial departure from the letter of the statute will not vitiate the trial. A flagrant disregard of such a statute would

not, of course, be tolerated, but an immaterial departure therefrom, evidently made for the purpose of further-ing the procuring of a fair and impartial jury, will not vitiate the trial. The departure in the present in-stance was of such a nature.

[4] The court, over objection of the appellant, gave to the jury instruction No. 32, which reads as follows:

"I instruct you that you have no right to speculate about whether the deceased, Anselmo Gonzales, made any statement concerning the manner in which he was shot, and any state-ment made by him except in the presence of the defendant would be inadmissible, unless it was a dying declaration or such impulsive declaration as he may have made at and imme-diately after the shooting."

The objection to the instruction urged is that it as-sumed that there was evidence showing the deceased made a statement concerning the manner in which he was shot, while in truth and in fact there was no such evidence; that the instruction left the jury to infer that deceased made declarations, but that the same were not dying declarations or impulsive declarations made in the presence of the defendant, and that for this reason the same would be inadmissible.

It is not proper to give an instruction which may be abstractly correct as a matter of law, where there is no basis for it in the evidence. Nor is it proper for the court in instructing the jury to define rules of evidence. Rules governing the admissibility of testimony are for the guidance of the court and not the jury. It is proper for the jury to consider all evidence submitted by the court, subject to such limitations as the court may im-pose, but always it is the province of the court to de-termine whether proffered evidence should or should not be admitted. Here, in the instruction in question, the court was undertaking to define to the jury a rule of evidence governing the admissibility of dying declara-tions or impulsive declarations. No such declarations had been offered in evidence or admitted, and the in-struction was calculated to mislead the jury, in that they might have assumed from this instruction that the

deceased had made a statement in regard to the shooting, but which was not admissible in evidence because it was neither a dying declaration nor an impulsive declaration.

In 14 R. C. L. p. 786, the rule is stated as follows:

"The scope of an instruction in a particular case is to be determined, not alone by the pleadings therein, but also by the evidence in support of the issues between the parties, and, even though an issue is raised by the pleadings, it is not proper to give an instruction thereon, although it may be abstractly correct, where there is no basis for it in the evidence.. The principle upon which this rule is founded is that only such an instruction should be given as is based upon the legitimate evidence in the case. The fact that it may be correct as a general principle of law is not material, for it is the duty of the court to confine itself to a statement of such principles of law as are applicable to the evidence received in support of the contentions of the parties, and thus to aid the jury in arriving at a correct determination of the issues involved. If an instruction is not based on the evidence it is erroneous, in that it introduces before the jury facts not presented thereby, and is well calculated to mislead and induce them to suppose that such a state of facts, in the opinion of the court, was possible under the evidence, and might be considered by them."

For the error in giving this instruction the case must be reversed and a new trial granted; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.