[No. 2973. June 29, 1926.]

STATE v. BRIGANCE.

[246 Pac. 897.]

SYLLABUS BY THE COURT

1. A homicide committed by one so intoxicated as to be incapable of deliberation is not murder in the first degree.

2. There being substantial evidence of the intoxication of the accused at the time of the homicide, the degree and effect thereof are to be determined by the jury, and it is error to refuse an instruction correctly pointing out its legal effect.

3. An accused is not entitled to have the jury informed of the statutory penalty or limits of punishment for the crime charged, and if he couples such a request with one for instruction as to the right of the jury to recommend clemency, the tendered instruction may be refused.

An appeal form District Court, Colfax County; Leib, Judge.

---

[1]  29CJ p. 1059 n. 11; p. 1060 n. 16; 30CJ p. 361 n. 40, 42.
[2]  30CJ p. 322 n. 60; p. 333 n. 44; p. 335 n. 66, 67; p. 336 n. 76; p. 337 n. 87; p. 361 n. 40; p. 396 n. 23; p 404 n. 93; p. 406 n. 17.   [3] 16CJ p. 1026 n. 7, 13; p. 1027 n. 17.

Newton C. Brigance, alias Clyde Norman, was convicted of murder in the first degree, and he appeals. Reversed and remanded for a new trial.

Geo. E. Hanis, of Raton, for appellant.

J. W. Armstrong, Atty. Gen., and Fred E. Wilson and James N. Bujac, Asst. Attys. Gen., for the state.

### OPINION OF THE COURT

WATSON, J.  Newton C. Brigance, alias Clyde Norman, appeals from a capital sentence on conviction of murder in the first degree for the killing of Oscar Davis.  The judgment must be reversed because of the refusal of the trial court to give appellant's requested instruction No. 17, as follows:

"There is evidence introduced in the case to the effect that the defendent on the day and just prior to the homicide had been drinking intoxicating liquor, and in this case you are instructed if by reason of intoxication the mind of the defendant was incapable of that cool and deliberate premeditation necessary to constitute murder in the first degree, but that the killing was unlawful and the act was not done under circumstances which would make the killing only voluntary or involuntary manslaughter, necessarily it would be murder in the second degree, as malice would be implied.  If the killing was unlawful and voluntary and without deliberate design, the offense is murder in the second degree and malice would be implied from the killing, unless you further find that the provocation was of such character as would reduce the crime to manslaughter, for which offense a drunken man is equally as responsible as a sober man."

This requested instruction states the law as laid down in State v. Cooley, 19 N. M. 91, 140 P. 1111, 52 L. R. A. (N. S.) 230.  Its correctness is not questioned by the Attorney General.  He does contend, however, that it was properly refused for two reasons:  (1) That the subject-matter was sufficiently covered by the court's instruction No. 23½; and (2) that the evidence of intoxication was not sufficient to require consideration of the jury.

[1]  The court's instruction No. 23½ was as follows:

"There is some evidence in this case tending to show

that at the time the defendant did the shooting which re-
sulted in the death of Oscar Davis, if you find that he did
·such shooting, he, the defendant, had been drinking to
some extent and was somewhat intoxicated.    The court in-
·structs the jury that. if a person is sober enough to
intend to shoot at another and actually does shoot at him
and kill him, without any justification therefor, then the
law presumes that such person is sober enough to form
the specific intention to kill the one shot at, and, in such
·case, he is criminally responsible for his act.    It is
only in cases where constant and excessive use of alcoholic
stimulants has produced actual insanity, resulting in de-
rangement of the mental and moral faculties to such an
extent as to render the person so afflicted incapable of dis-
tinguishing right from wrong, that crime may be excused
·thereby."

A glance at this instruction demonstrates that it
·does not cover the point of law raised by the requested
instruction. It deals only with the effect of intoxica-
tion as bearing upon intent to kill, and excludes in-
toxication of the sort shown in this case as a defense
to crime. It entirely overlooks the principle invoked,
that if the intoxication is of such degree as to render
the slayer incapable of that deliberation essential to
murder in the first degree, he cannot be guilty of that
degree of homicide. So the Attorney General's first
position is not tenable.

[2] Considering now the state's second position:
·There was evidence in the case that appellant had con-
sumed a considerable quantity of liquor during the
day, and was drinking up to a short time before the
homicide, and that he was drunk shortly before the
homicide. There was evidence introduced for the pur-
pose of showing the impairment of the mental faculties
of the accused from having been gassed during the
·war. There was evidence as to what he had been doing,
and how he had acted throughout the day. This evi-
·dence the state contends was not sufficient to impose
upon the court the duty of giving the requested in-
·struction. State v. Orfanakis, 22 N. M. 107, 159 P. 674,
is cited and relied upon.

In State v. Smith 26 N. M. 482, 194 P. 869, this court,
·citing the decisions in this jurisdiction, laid down these
rules of law: That the court must instruct in every

degree of crime charged, where there is evidence in the case tending to sustain such degree, and that it is error to refuse to do so; that the court should not instruct on a degree of the crime charged of which there is no evidence, and that it is error to do so. In Territory v. Lynch, 18 N. M. 15, 133 P. 405, there cited, it was said:

"It is needless to cite authority for the proposition that where there is any evidence tending to show such a state of facts as may bring the homicide within the grade of manslaugher defendant is entitled to an instruction on the law of manslaughter and it is a fatal error to refuse it."

In Ruiz v. Territory, 10 N. M. 120, 61 P. 126, it was said:

"The evidence in this case as to the intoxication of the defendant, and the extent and effect of it, was for the consideration of the jury, and in passing upon the guilt or the innocence of the defendant it was for them to determine whether or not the defendant was capable or incapable of forming a wilful and deliberate intention to kill the deceased, at the time he did so, by reason of the intoxication which the evidence disclosed."

It is also a well-established principle of law that an accused person is entitled to have not mere abstract instructions, but such as will enable the jury to determine the legal effect of the concrete facts of which there is proof. State v. Burkett, 30 N. M. 382, 234 P. 681. As said in Territory v. Chamberlain, 8 N. M. 538, 45 P. 1118, quoting Liskosski v. State, 23 Tex. App. 165, 3 S. W. 696:

"The charge of the court must make a pertinent application of the law covering every theory arising out of the evidence; that the duty is not dependent upon the court's judgment of the strength or weakness of the testimony supporting the theory, it being the prerogative of the jury to pass upon the probative force of the testimony."

The court submitted for the jury's determination whether the accused was guilty of murder in the first degree, murder in the second degree, or voluntary manslaughter. While the facts regarding appellant's condition of intoxication were before the jury, they were uninstructed as to their legal effect. Indeed, the jury might have well inferred from the instruction

given (No. 23½, supra), that the question of intoxication was to be considered only as complete defense to all guilt of the homicide, and then "only in cases where constant and excessive use of stimulants has produced a derangement of the mental and moral faculties to such an extent as to render the person so afflicted incapable of distinguishing right from wrong." The accused did not claim that his intoxication excused him from responsibility for the homicide. He merely claimed exemption from the highest guilt and the extreme penalty. So long as there was substantial evidence of intoxication, its degree and effect in fact were for the jury. Its effect in law was for the court. Having no instruction as to its effect in law, the jury could not deliberate, nor decide, upon its effect in fact, and the issues were not properly submitted.

State v. Orfanakis, supra, cited and relied upon by the Attorney General, we do not consider controlling. The court was there able to say that there was no evidence whatever as to the condition of the accused as to intoxication at the time of the homicide. It will not do so to judge the evidence in this case. If we were to do so, we should invade the province of the jury. While the point appears in that case to have been decided on the insufficiency of the evidence, it might well have been decided on legal propositions. The court was there requested to instruct that the intoxication of the accused might be taken into consideration "as affecting his mental condition at the time of the commission of said crime, and as affecting the degree of homicide of which you may find the defendant guilty, if you find him guilty at all." That presented quite a different point, and the request was properly refused under State v. Cooley, supra. It might also be noted that the accused was convicted only of murder in the second degree. A correct instruction on intoxication could have accomplished no more for the defense. State v. Carabajal, 26 N. M. 384, 193 P. 406, 17 A. L. R. 1098. The case is therefore distinguishable

from the case at bar, both in fact and in law, and is not, in our judgment, here to be followed.

[**3**] The following instruction was given and excepted to:

"No. 26. Under our statute, in all criminal cases, punishment within the limits prescribed by the law shall be fixed by the court in its discretion. You therefore will have nothing to do with what punishment the defendant in this case shall receive, if you find him guilty."

The following instructions were requested and refused:

"No. 18. You are instructed that you are the sole judges of the degree of homicide of which the defendant is guilty, provided you find him guilty, but it is the duty of the court to fix the punishment within the limits prescribed by law, and should you find him guilty of any degree of homicide less than murder in the first degree, the punshment for which is death, you may make such recommendations as to clemency as you see fit, which recommendations will be considered by the court in assessing the punishment.

"No. 19. You are instructed that the punishment for the three degrees of homicide, murder in the first degree, murder in the second degree, and manslaughter, are punishable as follows:

"Murder in the first degree is punishable by death; murder in the second degree is punishable with confinement in the state penitentiary for any period of time not less than three years; the crime of manslaughter is punishable in the state penitentiary for any period of time not less than one year and not more than ten years. However, the fixing of the period of punishment is not within the province of the jury, for the reason that it is the duty of the court to fix the punishment within the various degrees of homicide, and you are given this information for the purpose of aiding you in making such recommendations as to clemency as you deem proper."

Upon the giving of the one, and the refusal to give the two, error is assigned. It is urged that the jury should have been instructed as to its right to recommend clemency under Code 1915, § 4447; that the jury might well have understood that the court would have a discretion in fixing the punishment on a conviction of murder in the first degree; that the jury could not intelligently exercise its right to recommend clemency without a knowledge of the limits of punishment that might be inflicted; and that, though the verdict was

murder in the first degree, upon which a recommendation to clemency would have been unavailing, it does not appear that the error "could have prejudiced the party's rights"—citing Territory v. Griego, 8 N. M. 133, 42 P. 81.

Appellant, by his tendered instructions, sought to get two propositions to the jury, namely, the extent of the punishment for the several degrees of homicide submitted, and the right to recommend clemency. With the question of punishment, the jury had no concern. State v. Ellison, 19 N. M. 428, 144 P. 10. It would seem, therefore, that in requesting that the jury be instructed as to the punishment, appellant asserted a right to which he was not entitled, and that such requests were properly refused.

The argument that the jury cannot intelligently exercise its right to recommend clemency, without being instructed as to the limits of the court's discretion, is not sound. The recommendations is merely advisory and general. No specific recommendation as to punishment is authorized by the statute. State v. Carabajal, supra.

We would not be understood as holding that an accused person has not the right, on proper request, to have the jury instructed of its right to recommend clemency. We hold that such right does not confer the further right to have the jury instructed as to the limits of punishment. There are crimes the punishment for which is definitely fixed by statute, such as the rape of a child. Code 1915, § 1494, involved in State v. Ellison, supra. In such a case it would seem that the instruction should not be given. Where murder in the first degree and lesser degrees of homicide are submitted together, such instruction should be so framed as to avoid the error into which the court fell in Territory v. Griego, supra. It would seem possible to do so without instructing the jury that conviction in the first degree necessarily involves the death sentence.

Appellant directs criticism at the court's instructions. on self-defense. He contends that the distinction between actual and apparent danger was not sufficiently observed, and the jury not clearly given to understand that the question of danger is to be judged from the standpoint of the accused. There are passages in the instruction not entirely free from that fault. Whether they are cured by other passages we need not determine. On another trial, the court may avoid error by observing the principles of State v. Vansickel, 20 N. M. 190, 147 P. 457.

For the error pointed out, the judgment must be reversed. The appellant must have a new trial, and the cause is remanded therefor.

It is so ordered.

PARKER, C. J. and BICKLEY, J., concur.