417 P.2d 62

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Charles T. WILLIAMS, Defendant-Appellant.**

**No. 8091.**

Supreme Court of New Mexico.

July 18, 1966.

Dee C. Blythe, Richard F. Rowley, II, Clovis, for appellant.

Boston E. Witt, Atty. Gen., George Richard Schmitt, Roy G. Hill, Gary O. O'Dowd, Asst. Attys. Gen., Santa Fe, for appellee.

OPINION

LaFEL E. OMAN, Judge, Court of Appeals.

A jury in Curry County, New Mexico, found appellant guilty of murder in the first degree as charged in the information, with recommendation of life imprisonment. The trial court thereupon entered judgment and sentenced appellant to a term of life imprisonment in the state penitentiary. He has appealed from this judgment and sentence.

Three points are relied upon for reversal. The first point is that the court erred in refusing to grant a mistrial "when the State erroneously and without proof accused the defendant of having formerly been convicted of statutory rape."

Appellant took the stand as a witness in his own behalf, and on cross-examination was asked the following questions and made the following answers:

"Q. Incidentally, Mr. Williams, have you ever been convicted of a felony or misdemeanor?

"A. Yes, sir.

"Q. Where was that?

"A. San Juan County, Aztec, New Mexico.

"Q. What was the nature of the offense?

"A. Contributing to the delinquency of a minor.

"Q. To refresh your memory, wasn't it statutory rape?

"A. Contributing to the delinquency of a minor."

Appellant objected to the last question and stated as his reason:

" * * * that the State has no proof of the allegation he [Assistant District Attorney] is trying to bring before this Jury, and it is highly prejudicial and we ask for a mis-trial."

The court promptly excused the jury and made inquiry of counsel concerning the information available to them relative to the conviction in San Juan County. The District Attorney produced what is commonly referred to as an "F.B.I. rap sheet," which shows appellant was charged with statutory rape on January 31, 1961 and the disposition thereof as "3 to 5 yrs. susp. except 6 mos. Co. jail."

Appellant's counsel produced a copy of the judgment and sentence entered on March 21, 1961 in the District Court of San Juan County, and such shows the appellant pleaded guilty to the crime of "contributing to the delinquency of a minor under the age of eighteen (18) years."

After some discussion between the court and counsel, the court ordered the jury brought back into the courtroom and then gave the following admonition and instruction to the jury:

"Members of the Jury, the District Attorney in interrogating the Defendant, inquired as to whether he had been convicted in San Juan County, of a felony, of Statutory Rape. The District Attorney is not in a position to prove that the defendant was so convicted, and the information afforded us by the Defendant was that he was convicted there of contributing to the delinquency of a minor. Any reference to the Statutory Rape charge is to be disregarded by the Jury, and the Jury will consider that the only offense for which the Defendant was convicted in San Juan County was that of contributing to the delinquency of a minor. You may proceed Gentlemen."

Appellant made no objection to the court's admonition and instruction, the trial continued, and nothing further was said concerning the matter, until the same was raised here on appeal.

Section 20–2–3, N.M.S.A. 1953 provides:

"A witness may be questioned as to whether he has been convicted of any felony or misdemeanor, and upon being so questioned, if he either denies the fact or refuses to answer, the opposite party may prove such conviction; and a certificate, the substance and effect only, omitting the formal part, of the indictment and conviction for such offense, purporting to be signed by the clerk of the court or other officer having the custody of the records of the court

at which the offender was convicted, or by the deputy of such clerk or officer under the seal of said court, shall, upon proof of the identity of the witness, as such convict, be sufficient evidence of his conviction."

■ Pursuant to the provisions of this statute, we have repeatedly held that on cross-examination the state may establish by the accused the fact of a prior conviction and the name of the particular felony or misdemeanor of which he had been convicted. State v. Griego, 61 N.M. 42, 294 P.2d 282; State v. Ocanas, 61 N.M. 484, 303 P.2d 390. In the State v. Ocanas case, the District Attorney was apparently questioning the defendant from information contained in a record furnished by the Federal Bureau of Investigation, just as was being done by the Assistant District Attorney in this case. The majority rule is in accord with the holdings of this court, that an accused may be cross-examined as to prior convictions. Wigmore on Evidence, 3d Ed., Vol. IV, § 1270 at 538–545; McCormick on Evidence, § 43 at 93–94; Underhill's Criminal Evidence, 5th Ed., Vol. I, § 164 at 304–314.

■ The trial court is allowed a broad discretion in controlling the extent of cross-examination of an accused directed at testing his credibility. The primary responsibility is on the trial court to determine when the cross-examination should be limited, because the legitimate probative value on the credibility of the accused is outweighed by its illegitimate tendency, effect or purpose to prejudice him as a defendant. The discretion of the trial court in making this determination will not be disturbed on appeal, unless the appellate court can say the trial judge's action was obviously erroneous, arbitrary and unwarranted. State v. Holden, 45 N.M. 147, 113 P.2d 171.

■ We do not mean to suggest that cross-examination as to a prior conviction may go beyond eliciting from the accused the fact of his prior conviction, and the name of the particular offense. All reasonable care, and the utmost good faith, must be exercised by the prosecutor, when questioning an accused about prior convictions, to the end that an accused is not prejudiced by suggestions that he has been convicted of a misdemeanor or felony, when in fact he has not been so convicted. We do not believe that cross-examination of an accused based solely on information contained in an "F.B.I. rap. sheet" can ordinarily be said to be consistent with the exercise of all reasonable care and the utmost good faith. Generally, the prosecutor has the burden of going further to verify the prior conviction, before he can properly proceed to question the accused concerning the same.

■■ In the present case it was made clear to the jury by the two answers of ap-

pellant, and by the instruction of the court, that appellant was not convicted of statutory rape, as suggested by the question to which objection was made. If any error was committed by asking such question, we are of the opinion that such error was not prejudicial to appellant under the facts. Error, to warrant reversal, must be prejudicial. State v. Ancheta, 20 N.M. 19, 145 P. 1086; Rice v. United States, 149 F.2d 601 (10th Cir. 1945).

See also State v. Dendy, 34 N.M. 533, 285 P. 486; State v. Garcia, 57 N.M. 665, 262 P.2d 233; State v. White, 61 N.M. 109, 295 P.2d 1019.

We have not overlooked the case of State v. Stago, 82 Ariz. 285, 312 P.2d 160, upon which appellant so heavily relies. It appears that case was reversed for reasons other than the fact that the prosecutor asked the defendant if he had ever been convicted of a felony, and then, after some discussion between the court and counsel, withdrew the question. It is true the Arizona court stated that the prosecutor "cannot engage in questioning which casts insinuations without being prepared and able to prove the insinuations," and suggested that the prejudice to defendant may not have been expunged by the trial court's instruction to disregard "any thought whatsoever of the meaning of the question propounded." We do not believe that the Arizona court, by its language, meant that the prosecutor must always be able to prove

a prior conviction by documentary evidence, before an accused can properly be asked about such conviction, regardless of the circumstances and regardless of the care and good faith exercised by the prosecutor, or that an instruction by the trial court can never cure the damage, if any, done by questions concerning a prior conviction which is not subsequently proved. Whether or not the prosecutor has acted improperly, and whether or not the defendant has been prejudiced thereby, must depend on the facts and circumstances of each case. See the annotation in 3 A.L.R.3d at 965–969, concerning the effect of the prosecutor asking defense witnesses, other than the accused, as to prior convictions, when he is not prepared to offer documentary proof in the event of a denial.

Appellant's second point is that his:

" * * * challenge of the jury panel should have been sustained on grounds that it was not apportioned 'as nearly as may be * * * among various precincts according to voting population' and that this amounted to systematic discrimination against appellant and other members of the Negro race."

Appellant filed a written "Challenge of Jury Panel," and, insofar as the same is pertinent to his point relied on for reversal, asserts:

" * * * that the jury list chosen by the jury commission appointed by the

court after the 1964 general election did not select as many persons to serve as jurors from Precinct 9, in which the alleged offense occurred and in which defendant and most of the Negro population of Curry County resides, as is required by Section 19-1-11, NMSA, 1953 Comp."

He then recites that 10,596 ballots were cast in Curry County in the 1964 general election; that the jury commission, pursuant to order of the court, selected the names of 1,060 of the persons who cast such votes to be placed in the jury wheel; that the voting population of Precinct 9 was 932, or 8.8% of the county's voting population; that the number of names selected from Precinct 9 was 72, or 6.8% of the total number of names selected; that Precinct 9 was entitled to have 93 names selected, which was 29% more than the 72 actually selected; and that of the venire of 34 persons, from which the petit jury of 12 was selected to try appellant, not one was from Precinct 9, whereas, according to mathematical probabilities, three of the 34 persons should have been from this precinct.

Appellant's assertions as to the number of votes cast in the 1964 general election, the number of votes cast in Precinct 9, the number of names selected by the jury commission and placed in the jury wheel, and particularly, the number selected from Precinct 9, were supported by exhibits and concurred in by the District Attorney.

There is nothing in the record to indicate how many or what percentage of the voters in the county, or in Precinct 9, were of the Negro race, or how many persons of such race were included in the 1,060 names selected and placed in the jury wheel, or the number thereof included in the 72 selected from Precinct 9.

The question resolves itself into one of whether the failure of the jury commission to select a percentage of the prospective jurors from Precinct 9, equal to that percentage which the number of voters from Precinct 9 bore to the total number of voters in the county, operates to make the jury panel of 34 drawn from the 1,060 names placed in the jury wheel, a void panel. As already stated, there were 72 names from Precinct 9 selected and placed in the jury wheel, but none of these happened to be among the 34 drawn as the panel from which the 12 petit jurors were selected.

It cannot follow that had there been 21 more names from Precinct 9 contained in the 1,060 names in the jury wheel, that the law of chance, or mathematical probability, in the selection of the 34 names from the 1,060 in the jury wheel would have resulted in three of the 34 coming from this precinct. Unless our entire system of selecting juries be changed, it cannot

be determined, mathematically or otherwise, whether any particular jury panel, and particularly a petit jury of 12 selected therefrom, will contain one or more persons from any particular precinct.

Section 19-1-11, N.M.S.A.1953 requires that the jury commission, in selecting the names of jurors to be put into the jury box from the certified list furnished by the Clerk of the District Court, "shall, as nearly as may be, apportion the names selected by them among the various precincts of the county according to voting population." Appellant's position, as set forth in his brief in chief, is that the words "as nearly as may be" require a precision of selection to "within a fraction of a juror with respect to each precinct." We do not agree.

Statutory provisions for the selection of jurors are generally held to be directory and not mandatory. State v. Leatherwood, 26 N.M. 506, 194 P. 600; 31 Am.Jur., Jury, § 78; 50 C.J.S. Juries § 163. However, the jury commission is charged with the duty of heeding this statutory enjoinder, and should endeavor to apportion the names accordingly.

No showing has been made that appellant was in any way prejudiced by the failure of the jury commission to select the names of 21 additional persons from Precinct 9. He had the right to be tried by a fair and impartial jury. In the absence of any showing that he was prejudiced in this right, he cannot be heard to complain. State v. Leatherwood, supra.

Appellant's third point is that the court erred in refusing to give his requested instruction on the question of his intoxication. He urges that there was evidence from which the jury might have found he was under the influence of intoxicants to the extent that his thinking processes were so affected that he was incapable of premeditation.

The evidence on which appellant relies to support his contention is his testimony that he drank a double shot of scotch. This was approximately an hour, and perhaps a little longer, before he shot and killed his former friend and business associate. He at no time was asked concerning the effect upon him of the whiskey which he stated he had consumed, and he at no time made any statement which would even indicate that he was affected by such.

The other bit of evidence upon which he relies is the testimony of a captain of the Clovis Police Department who saw and talked with appellant shortly after he says he drank the double shot of scotch and about an hour before the shooting. The officer testified he could smell a slight amount of alcohol on appellant's breath and that appellant told him that he had been drinking. When asked if appellant appeared to be intoxicated, his answer was very definitely in the negative.

All other evidence which in any way related to the drinking of liquor by appellant, or to his condition relative to being under the influence thereof, which evidence was very limited, negatived any inference or suggestion that he was in any degree under the influence of intoxicants. There is no evidence which in any way suggests he was under the influence of intoxicants at the time of the shooting.

▉▉▉▉ In a homicide case the defendant is entitled to have the jury determine the degree and effect of his intoxication upon his mental capacity and deliberative powers. State v. Brigance, 31 N.M. 436, 246 P. 897; State v. Butler, 38 N.M. 453, 34 P.2d 1100. However, the evidence as to intoxication must be substantial and must relate to defendant's condition as of the time of the commission of the homicide, or be so closely related in time that it can reasonably be inferred that the condition continued to the time of the commission of the homicide. State v. Orfanakis, 22 N.M. 107, 159 P. 674; State v. Brigance, supra; State v. Butler, supra. Here we have neither substantial evidence of intoxication nor any evidence of his condition at or near the time of the shooting.

▉▉▉▉ Appellant must fail under this point for the further reason that his requested instruction on intoxication did not correctly state the law. This requested instruction reads in part as follows:

"If the defendant was under the influence of intoxicants to the extent that his judgment and thinking processes were affected, he might be incapable of premeditation, and in that event he could not be found guilty of first or second degree murder."

The error in the instruction lies in the fact that voluntary intoxication is no defense to murder in the second degree. State v. Cooley, 19 N.M. 91, 140 P. 1111, 52 L.R.A.,N.S., 230; State v. Aragon, 35 N.M. 198, 292 P. 225; State v. Padilla, 66 N.M. 289, 347 P.2d 312, 78 A.L.R.2d 908.

▉▉▉▉ In order to preserve error for review because of the failure of the trial court to instruct upon a specific issue or defense, the defendant must tender a proper instruction on the issue. State v. Compton, 57 N.M. 227, 257 P.2d 915; State v. White, 58 N.M. 324, 270 P.2d 727; State v. Selgado, 76 N.M. 187, 413 P.2d 469.

Finding no error, the judgment and sentence of the trial court should be affirmed.

It is so ordered.

CARMODY, C. J., NOBLE and MOISE, JJ., and JOE W. WOOD, J., Court of Appeals, concur.