300 P.2d 792

**Ben P. SNURE, Jr., Plaintiff-Appellee,**

**v.**

**Jack SKIPWORTH, Denby Hoyle, Jack Hitson, The Clovis National Bank and The Citizens Bank, Defendants-Appellants.**

**No. 6077.**

Supreme Court of New Mexico.

July 31, 1956.

Rehearing Denied Sept. 7, 1956.

Hartley & Buzzard, Clovis, for appellants.

Bean, Osborn & Snead, Roswell, for appellee.

SADLER, Justice.

The defendants below, who appear in this Court as appellants, complain of a judgment rendered against them, jointly and severally, in favor of the plaintiff for the aggregate amount of moneys taken from him in a night of gambling at Clovis, New Mexico, in the early morning hours of December 3rd, and continuing until midafternoon of December 4, 1954.

The plaintiff, a young cattleman residing at Apache, Arizona, arrived in Clovis, New Mexico, with four truckloads of cattle a day or two prior to the dates just mentioned. Soon after his arrival, having made disposition of his cattle to two different commission houses and received payment therefor, the plaintiff visited a place known as the Cattlemen's Club operated by one of the defendants, Jack Skipworth.

The plaintiff had begun drinking after selling his cattle and upon arriving at the club suggested he would like to get into a poker game. The defendant, Skipworth, showed a disposition to accommodate the plaintiff, but explained to him that he would have to get together some poker players before the game could start. What he did was to telephone the other two defendants,

Hoyle and Hitson, at Hobbs, New Mexico, some 110 miles away.

The two defendants mentioned, accompanied by a female acquaintance, left Hobbs around midnight, arriving in Clovis about 2:00 a. m. The young girl who had accompanied them from Hobbs was sent back there alone in defendant Skipworth's car before dawn of the 4th, starting soon after reaching Clovis. The game started at once following receipt of a new deck of cards sent for by plaintiff who seemed reluctant to play with any cards on the premises.

Shortly before midnight the plaintiff, growing restless, announced an intention to return to his hotel, but upon assurance by Skipworth that he had called the two other defendants who were then en route, prevailed upon plaintiff to wait. A little later, the plaintiff again showing his impatience, started to go back to his hotel but was reassured by Skipworth that the two players he had called would be there in a short time. The plaintiff had never previously met defendants Hitson and Hoyle and, following introductions, the game started immediately upon their arrival. There was never anyone in the game besides the plaintiff and these three defendants.

The game stopped once when one of the defendants left it, temporarily, and recessed two other times when the plaintiff left the game in search of more money. Except for these short interruptions the game proceed-ed unabated until three o'clock the afternoon of the day it had begun at 2:00 a. m., previously. The plaintiff continued drinking throughout the progress of the game and grew progressively drunker as the game proceeded. His total losses were $10,183 made up of three cattle commission checks totaling $8,183 given plaintiff by the purchasers of his cattle, all of which bear the endorsement of the defendant Skipworth and a $2,000 draft on plaintiff's Arizona bank procured in the early afternoon of December 3, 1954, when defendant Skipworth accompanied plaintiff to a Clovis bank in order that the latter could obtain that much cash in order to stay in the game.

The amount of money actually lost by plaintiff became a disputed question of fact at the trial. There was abundant evidence to permit the jury to find, however, that he lost the sum mentioned above, to say the least. The defendants themselves became confused and uncertain in their testimony each, at times, claiming to have won nothing and at other times admitting certain winnings. They contended plaintiff had lost only $750 in the game. The defendant, Skipworth, admitted that he knew other gamblers in Clovis, yet for this game he felt impelled to put in a call at midnight for two gamblers in far away Hobbs.

The matter was submitted to the jury on a general charge which returned a verdict in favor of the plaintiff and against the defendants, finding they were indebted to

him in the sum of $10,183, jointly and severally. The court rendered judgment accordingly. Hence this appeal.

In his first amended complaint filed in the cause below the plaintiff had joined as defendants Clovis National Bank and the Citizens Bank of Clovis, hoping to impound the proceeds of certain checks negotiated by plaintiff in this gambling transaction but after one day of trial, the counsel for plaintiff became convinced the banks were innocent parties in cashing the checks mentioned. They were, accordingly, dismissed out of the case. Prior to dismissal, however, the defendant banks had answered and filed cross-complaints against the three defendants.

After the filing of the first amended complaint the defendants filed a second motion to dismiss on the ground of insufficient allegations as to fraud. The motion was sustained and the allegations of fraud were stricken from the complaint on the ground that fraud was not pleaded with particularity. This left the plaintiff with his statutory action under 1953 Comp. § 22–10–1. When he rested, the defendants moved for a directed verdict which motion was renewed at the conclusion of the case. It was denied in each instance.

· Subsequently, and following the return into court of a verdict in favor of the plaintiff, the defendants moved for judgment notwithstanding the verdict which motion was denied. At the hearing on their motion for judgment notwithstanding the verdict, the plaintiff made an oral motion to amend his first amended complaint to conform to the proof so as to allege a joint and concerted plan by defendants to win from plaintiff in gambling and share in the winnings. This motion was granted in the following form, to wit:

"That the defendants Skipworth, Hitson and Hoyle participated in a joint and concerted plan and in unison to win said moneys from the plaintiff in said gambling game and to share in the moneys won from the plaintiff in said gambling game."

The basic theme of counsel for defendants in their effort to overturn the jury's verdict and secure a reversal is rested on the contention that, after dismissal from the case of the allegations of fraud contained in the first amended complaint, the plaintiff was confined to an action to recover under the statute, all allegations as to fraud, conspiracy and overextension having been stricken from plaintiff's complaint.

The plaintiff sums up his position on this point, as follows:

First, that no issues were presented to the jury that were not raised by the pleading; that questions of fraud or cheating on the part of the defendants were not submitted to the jury;

Second, that the questions of a joint and concerted plan among the defendants to win the plaintiff's money at gambling and an agreement to share in the money won from the plaintiff at gambling, were properly presented to the jury.

Third, that the admission of testimony without objection effected an automatic amendment of the pleadings, if necessary, on such questions, and the formal amendment allowed by the trial court was not necessary.

In other words, it is the position of plaintiff that the issues of fraud and cheating were never injected into the trial nor were they submitted to the jury; the issue of a concerted plan on the part of the defendants, together with an agreement on their part to share winnings, was in the case and properly submitted to the jury. Thus we have the contrasting theories of the parties at the trial and here.

The statute under which the plaintiff seeks recovery is of ancient vintage, appearing first in the Laws of 1856–1857, just one hundred years ago to be exact. It appears now as 1953 Comp. § 22–10–1, reading as follows:

"Any person who shall lose any money or property at any game at cards, or at any gambling device, may recover the same by action of debt, if money; if property, by action of trover, replevin or detinue."

The statute has been before this Court directly or incidentally in several cases arising in territorial days and since statehood. See, Armstrong v. Aragon, 13 N.M. 19, 79 P. 291; Mann v. Gordon, 15 N.M. 652, 110 P. 1043; Farmers' State Bank of Texhoma, Okl. v. Clayton National Bank, 31 N.M. 344, 245 P. 543, 46 A.L.R. 952.

The defendants present three points upon which they rely for reversal, the first two relating to the pleadings and the issues properly to be litigated under them. The third point is a complaint of error with reference to the peremptory challenges allowed the defendants. The first two points relating to the pleadings, as they do, and the proof permissible under them, may be treated together. The two points just mentioned are set forth by counsel for defendants as follows:

"Point I

"After the order of dismissal affecting appellee's first amended complaint the complaint was confined to an action to recover under the statute. All allegations as to fraud, conspiracy and overextension were stricken from appellee's complaint.

"Point II

"Under the issues raised by the pleadings the appellee could not litigate the question of whether or not the appellants had entered into a conspiracy to defraud."

It is strongly urged upon us by counsel for defendants that no recovery against the defendants under the pleadings was permissible unless the plaintiff sustained the burden of showing just exactly how much he lost to each of the three defendants, separately; that the proof was wholly inadequate to sustain such burden; that after the motion to strike allegations of fraud and cheating from the amended complaint, there was no pleading left to support a finding by the jury that there was a concerted plan between defendants to engage plaintiff in the game of poker and share the winnings.

■ A careful review of the record in this case satisfies us that the jury was properly instructed on the law and was justified under the evidence in the case in returning the verdict it did. The mere fact that plaintiff himself first suggested a game of poker does not deny him the benefit of the statute involved.

It is more than passing strange that in order to accommodate the plaintiff with a game, the defendant, Skipworth, felt called upon to put in a long distance call near midnight for the other two defendants, then at Hobbs, New Mexico, more than 110 miles distant. Significantly, the plaintiff would have been led to believe, from all that was said, that Skipworth had simply notified some persons right in Clovis to come over for a game. Certainly, he did not divulge to plaintiff he had called players 110 miles away.

It is to be remembered that the gambling session with which we are here concerned lasted some 14 hours. There were some short breaks when one or another of the players was absent or asleep, as for instance when plaintiff and Skipworth left to cash a $2,000 draft on plaintiff's home bank and when Skipworth went alone to the bank to cash for plaintiff his cattle check for $6,942.15.

It is significant that the three cattle commission checks, aggregating $8,183, all bore the endorsement of the defendant Skipworth. The latter claims to have brought the proceeds of the $6,942.15 check to the gaming room in large denomination currency and delivered same to plaintiff at the gaming table. The defendants all admit they were playing for large stakes, one of them recalling several pots as high as $700 and, testifying, also, that the plaintiff had won a pot as high as $4,000. Several different kinds of poker were played during the session.

■ With stakes as high as those played it would not require long to take all a given player had, irrespective of its amount and leave him penniless. We think there was sufficient evidence before the jury to support its verdict that the defendants confederated to take plaintiff's money in a game of chance and share in the proceeds. Such

being the case, it was not necessary for him to establish just how much money he lost to each defendant. To uphold such a requirement would render it impossible, as a practical matter, to recover in any case where there were a large number of players. It was enough to show circumstances from which the jury might very well infer that the defendants did combine to clean the plaintiff of a large sum of money and share in the proceeds.

Necessarily, the plaintiff was compelled to rely on circumstantial evidence to establish much of his case. The fact defendants were engaged at poker for some 14 hours is undisputed. It is equally clear that all three checks aggregating more than $8,300 bore the endorsement of Skipworth, one of the defendants who the jury may very well have thought was the pay-off man.

The defendants, while unwilling to admit they were professional gamblers, could have left little doubt in the jury's mind about their skill at cards. And the fact that one of their number, possessed at the time of knowledge there were available gamblers and poker players in Clovis, saw fit to call the other two defendants at midnight some 110 miles away at Hobbs, in the light of what followed, exposed them all to deadly inferences at the hands of the jury.

■ There emerge in this case too many strange and unexplained incidents to deny the jury the right to render the verdict it did. Some have been mentioned. Still another has not been mentioned. It is significant that all three defendants stayed in the game until its end—that is, until the plaintiff's money ran out! One defendant even accompanied him to the bank to get more. It is common knowledge that a constant loser usually drops out of a game. Not so here, which is a pretty good sign all were winning, as a group, even though one may have been a loser, individually. If winnings were to be shared, all must lose, or none would. So long as they were winning as a group, it is readily understandable why none dropped out of the game. So the jury must have reasoned.

■ There can be no doubt that when two or more confederate to "shear a lamb" at gaming, they render themselves jointly and severally liable under statutes such as ours. 38 C.J.S., Gaming, § 38, pp. 103, 104; 24 Am.Jur. 458, § 83, "Gaming and Prize Contests"; Bynum v. Brady, 82 Ark. 603, 100 S.W. 66; Parsons v. Wilson, 94 Minn. 416, 103 N.W. 163; Silver v. Ford, 64 Ga. App. 679, 14 S.E.2d 132.

■ Finally, the defendants assert error in the trial court's action on the number of peremptory challenges allowed them. It will be recalled that the two banks were made parties defendant, and after answering and filing cross-complaints, they were dismissed out of the case when it had been on trial for one day. The judge announced at beginning of the trial that he would allow

the defendants as a group five peremptory challenges. Accordingly, on the record before us all five defendants, that is to say, the three defendants and the two banks who were dismissed from the case in the course of the trial, joined in the five peremptory challenges exercised by them without protest or objection of any sort. Counsel cite People v. Kassis, 145 Misc. 493, 259 N.Y.S. 339, holding, and properly we think, that a challenge made by one of several co-defendants must be regarded as a joint challenge, unless the other defendants dissent or object. In so doing, say counsel for the plaintiff, a waiver resulted, since upon no theory would the defendants, or any of them be entitled to a sixth peremptory challenge.

■ True enough, a motion for a sixth challenge was made by counsel for the two banks, joined in by one of counsel for the three defendants against a Mrs. Adolph E. Guthals. This motion was interposed when, so far as the record here shows, all defendants before us had already joined with the other two defendants below in exercising five peremptory challenges and the jury had been sworn. If they already had exercised five peremptory challenges, certainly, they were not entitled to exercise the sixth such challenge.

We have somewhat recently had occasion to construe our statute, 1953 Comp. § 19–1–36, dealing with the number of peremptory challenges permitted defendants in civil cases, namely, Morris v. Cartwright, 57 N.M. 328, 258 P.2d 719, and American Insurance Co. v. Foutz and Bursum, 60 N.M. 351, 291 P.2d 1081. Neither of these cases, however, settles the question before us now.

The plaintiff sums up his argument on this point, as follows:

"That the defendants, by joining in the five peremptory challenges without protest or objection, have *each* exercised five challenges; that the five joint challenges are the challenges of *each* of them; and that the defendants, or any combination of them, are not entitled to a *sixth joint peremptory challenge*.

"That, from the record before the Court, it is apparent that the verdict of the jury was unanimous, in which event the verdict could not have been different even if the trial court had permitted the sixth joint challenge sought by the defendants; thus there can not possibly be any prejudice to the defendants."

The proposition put forward in the second paragraph is to the effect that since this is a civil case in which ten of the twelve jurors could return a verdict, yet, it appeared to be unanimous. Certainly, there was no request by either side to poll the jury. Nevertheless, the trial judge in-

quired, specially, whether either side wished the jury polled and received no response from either side.

Thus it is, say counsel, that if the joint peremptory challenge of Mrs. Guthals had been allowed, it could in no manner have affected the result of the trial. They cite 5 C.J.S., Appeal and Error, § 1708 b, p. 902, to the proposition that a case will not be reversed by reason of error in ruling on a peremptory challenge where no harm results therefrom to the objecting party. Satisfied, however, as we are, that action of the trial court was correct on the first ground advanced by plaintiff's counsel, we see no occasion to pass upon the second ground.

Our right to settle this claim of error in accordance with the record showing is challenged by counsel for defendants. Both by affidavits and assertion they insist that their attempt to challenge peremptorily the sixth juror was made before the jury was sworn. Otherwise, it would be too late. State v. Leatherwood, 26 N.M. 506, 194 P. 600. We may add that recollection of plaintiff's counsel accords with this claim of defendants, supported as well by affidavits filed by the attorney for one of the banks and one of the attorneys for the present defendants. While we have no reason to doubt and we do not doubt the statements of counsel; nor do we question the veracity of the recitals in the affidavits filed; yet, we are bound by the record before us to the contrary in determining the appeal and the points raised on it. The record affirms the jury had been sworn. State v. Smith, 24 N.M. 405, 174 P. 740; Heron v. Gaylor, 49 N.M. 62, 157 P.2d 239. See, also, State v. Compton, 57 N.M. 227, 257 P.2d 915.

Finding no error, the judgment will be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.