526 P.2d 1282

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Tony CRESPIN, Defendant-Appellant.**

**No. 1421.**

Court of Appeals of New Mexico.

Sept. 18, 1974.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Don Klein, Associate Appellate Defender, Santa Fe, for defendant-appellant.

David L. Norvell, Atty. Gen., Jay F. Rosenthal, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

SUTIN, Judge.

Defendant appeals from a conviction for aggravated battery. Section 40A–3–5, N.M.S.A. 1953 (2d Repl. Vol. 6). We reverse,

(A) *Refusal to give requested instruction on theory of defense was reversible error.*

(1) *Facts*

The state's case shows that on May 15, 1973, at about 9:30 p. m., the foreman for State Electric and a fellow employee were walking east on Central Avenue near Fifth Street in Albuquerque. When the foreman came abreast of two men, the defendant, 23 years of age, stabbed the foreman in the chest with a knife. Defendant stood there for a few minutes and nonchalantly walked off slowly. Defendant's eyes were glassy, but he looked "cold sober" at the foreman. Defendant looked just as serious as he could be. No conversation occurred during this event.

The police were called. Shortly thereafter, defendant was arrested for being drunk as he staggered and weaved slightly. He smelled heavily of alcohol, but he was able to converse in a coherent manner.

For his defense, defendant testified that he was an alcoholic; that he had drunk wine and beer heavily during the day and evening; that every time he drank heavily, he had blackouts. Defendant remembered nothing that occurred during the aggravated battery and woke up in the city jail the next morning.

Dr. William R. Lowe, Jr., Director of the Forensic Treatment Unit at the State Mental Hospital in Las Vegas, testified about defendant's confinement at the State Hospital. Based upon an assumption that defendant ingested sufficient intoxicants to induce a blackout, "then he would have no control over his intent or his acts . . . the question of right or wrong would never arise, he'd have no comprehension . . . he would not know the nature and gravity of his acts. . . ."

Defendant requested the following instruction which the court refused:

No. 7 - You are instructed that generally, voluntary intoxication is not of itself a defense to the crime charged in this case. However, when the existence of a particular and specific motive, purpose or intent is a necessary element to constitute a crime, the jury in determining whether or not such motive, purpose or intent existed in the mind of the accused, must take into account the evidence offered to prove that the accused was intoxicated at the time when the crime allegedly was committed.

Thus in the crime of aggravated battery, the specific intent to injure is a necessary element of the crime. The defendant may not be found guilty of the crime of aggravated battery unless you can and do find beyond a reasonable doubt that the intent to injure existed in the mind of the defendant at the time when the crime allegedly was committed.

It is proper to consider whether the defendant was intoxicated in determining his state of mind at the time the crime allegedly was committed. If you entertain a reasonable doubt that the defendant was unable to form the specific intent required on account of and by reason of intoxication, you must find the defendant not guilty of aggravated battery.

(2) *The Law*

Section 40A–3–5, supra, reads:

Aggravated battery consists of the unlawful touching or application of force to the person of another *with intent to injure that person or another.* [Emphasis added.]

■ Aggravated battery is ·made a specific intent crime by statutory language. Specific intent to injure a person is an essential element of the crime. The state must prove beyond a reasonable doubt that the defendant knowingly committed an aggravated battery, purposely intending to violate the law. See State v. Ramirez, 84 N.M. 166, 500 P.2d 451 (Ct.App.1972), concurring opinion. The state proved a prima facie case.

■ However, voluntary intoxication is neither excuse nor justification for a crime which does not require specific intent.

State v. Ramirez, supra. But " . . . in crimes where a specific intent is a necessary element, a showing of intoxication to a degree that would make such an intent impossible, would establish a valid defense to the charge." State v. Tapia, 81 N.M. 274, 276, 466 P.2d 551, 553 (1970). See Annot. 81 A.L.R.3d 1236 at 1246. We have often said, "When a defendant claims he was so intoxicated as to be unable to form the necessary intent, the question of intent is a matter for the jury." State v. Nelson, 83 N.M. 269, 271, 490 P.2d 1242, 1244 (Ct.App.1971).

■ We hold that the evidence in defendant's case raised an issue of fact for the jury on the question of intent to injure by showing intoxication to such a degree that defendant was unable to form the necessary intent. This was a valid defense and defendant was entitled to an instruction on this defense. State v. Tapia, supra; State v. Nelson, supra. For a case directly in point, see State v. Seely, 212 Kan. 195, 510 P.2d 115 (1973).

The failure to so instruct is reversible error. State v. Rayos, 77 N.M. 204, 420 P.2d 314 (1967); State v. Brigance, 31 N. M. 436, 246 P. 897 (1926); State v. Padilla, 66 N.M. 289, 347 P.2d 312 (1959); State v. Butler, 38 N.M. 453, 34 P.2d 1100 (1934). See State v. Flores, 82 N.M. 480, 483 P.2d 1320 (Ct.App.1971).

The state's only answer is that aggravated battery is not a specific intent offense. We do not agree. It contends that the trial court's instruction was a correct statement of the law.

The trial court instructed the jury as follows:

You are instructed that voluntary drunkenness is no excuse or justification for crime, and in this case, notwithstanding you may believe from the evidence that at the time of the commission of the acts charged against him, the Defendant was intoxicated, you are instructed that this will not constitute any defense for him and you will not acquit him on that ground.

■ This instruction, as we have heretofore shown, would be proper in a nonspecific intent offense, but it is erroneous for use in a specific intent offense.

"We, of course, have no way of knowing what would have been the reaction of the jury if the requested instruction had been given, and it may very easily be there would have been no change in the verdict. However, as we view the evidence, the defendant was entitled to the proferred instruction and it was error on the part of the trial court to refuse the same." State v. Padilla, supra.

(B) *Defendant was entitled to instruction on mental illness or insanity.*

Defendant's requested instruction No. 9 pertained to the issue of insanity as a defense. This request was denied. The state does not question the correctness of the instruction. It simply argued that the evidence did not warrant an instruction on insanity. We disagree.

Requested instruction No. 9 reads as follows:

The defendant is not criminally responsible or guilty if you are satisfied that at the time of committing the act alledged [sic], the accused as a result of a disease or defect of the mind, met any one of the following conditions:

1. Did not know the nature and quality of the act, or

2. Did not know it was wrong, or

3. Was incapable of preventing himself from committing it. If you find the accused was insane at the time of committing the act alleged, a special verdict form is provided for such finding.

Dr. William R. Lowe, Director of the Forensic Treatment Unit at the State Hospital in Las Vegas, supervises the activities of some 58 people. These include nurses, psychologists, social workers, attendants, and others who maintain a treatment unit for persons who are either mentally ill or for whom there is some question as to their emotional stability and who are in this unit for clinical evaluation or treatment.

The court accepted Dr. Lowe as a qualified expert witness.

During the years 1970, 1972 and 1973, defendant admitted himself or was committed to the State Mental Hospital in Las Vegas, New Mexico, a total of nine times for evaluation and treatment. On April 23, 1973, some three weeks before the offense was committed, defendant was recommitted to the hospital for evaluation by the court. He was recommitted to the hospital on July 20, 1973.

A psychologist's report said defendant "manifests major indications of organic brain disfunction." It was Dr. Lowe's opinion that defendant's "organicity brain damage occurs from a habitual excessive alcoholism . . . he has a mental disability." From tests given, defendant "does not have control over his motor functions, nor his comprehension, nor his memory, as well as he might were there not some indication of brain disfunctions." As set forth under point (A), if defendant ingested sufficient intoxicants to induce a blackout, "then he would have no control over his intent or his acts. . . . The question of right or wrong would never arise, he'd have no comprehension . . . he would not know the gravity of his acts."

We believe this evidence is sufficient to warrant an instruction on the issue of sanity or mental illness as a defense. State v. Flores, supra; State v. Nelson, supra.

This court clearly recognizes the dangers involved in allowing chronic alcoholics with brain damage to roam the streets and the problem involved in finding a solution. See Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). Faced with this unpleasant reality, we feel compelled to see that defendant gets a fair trial.

(C) *Other points raised on appeal not erroneous.*

Defendant also contended, (1) he was entitled to a directed verdict because there was insufficient evidence to prove specific intent to injure, (2) other requested instructions were not given, (3) fundamental error, and (4) defendant was incompetent to stand trial.

We have reviewed these points and find no additional error.

Reversed. Defendant is granted a new trial.

It is so ordered.

WOOD, C. J., and HERNANDEZ, J., concur.