717 P.2d 55

**STATE of New Mexico,**
Plaintiff-Appellee,

v.

**Julian Victor PRIVETT,**
Defendant-Appellant.

No. 15852.

Supreme Court of New Mexico.

April 11, 1986.

Paul Bardacke, Atty. Gen., Patricia Frieder, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Fred Boone, Calvin R. Newmann, Clovis, for trial attys. for defendant.

**OPINION**

WALTERS, Justice.

Defendant Privett appeals from a conviction of first degree murder on two grounds:

(1) The trial court erred in refusing to instruct the jury on diminished responsibility resulting from intoxication (NMSA 1978, UJI Crim. 41.10) (Repl.Pamp.1982)).

(2) The trial judge's conduct deprived defendant of a constitutionally fair trial.

Because it was error to refuse defendant's requested instruction, we do not reach the second issue.

The evidence in this case was circumstantial. At approximately 8:15 a.m. on August

31, 1984, a family acquaintance (Mrs. Cosper) went to the Privett home in response to defendant Privett's call for help. When she arrived, she found that defendant's wife was unable to walk and had multiple bruises, contusions and abrasions on her body. Defendant and Mrs. Cosper assisted Mrs. Privett into bed and Mrs. Cosper left around 9:00 a.m. after defendant promised that he would call an ambulance.

Approximately an hour later, Mrs. Cosper returned with her brother and a friend and was told by defendant that Mrs. Privett had fallen out of bed and he had "just throwed her back on." After conversing with defendant for about five minutes, Mrs. Cosper went into the bedroom and found Mrs. Privett dead.

At trial, Mr. Privett testified that his wife had lost her equilibrium and had fallen repeatedly during the 36 hours preceding her death. He stated that he suffered from arthritis and was not fully able to help his wife so, on one occasion, she had crawled from the bedroom to the kitchen. He denied having hit her and said she had refused to go to the hospital because she was on probation for DWI and "had too much alcohol in her."

According to pathologist witnesses, over 90% of Mrs. Privett's injuries occurred within 24 hours of her death, the wounds being inconsistent with those caused by falling. The Privetts' daughter and grandson testified that Mr. Privett had beaten his wife in the past, that his personality changed when he was drinking, and that sometimes he became violent. Evidence showed, too, that Mr. Privett suffered from occasional alcoholic blackouts.

Mrs. Privett was also an alcoholic. She had a medical history of bruising easily, of severe lung disease, and a recent history of dizzy spells. The cause of her death was pneumonia which was either caused or aggravated by her broken ribs.

The trial court refused defendant's tendered instructions on voluntary and involuntary manslaughter and on diminished responsibility resulting from intoxication. The jury was instructed on first and second

degree murder; it returned a verdict of first degree murder. Mr. Privett was immediately sentenced to life imprisonment. He does not appeal the refusal of his requested manslaughter instructions.

 The specific, deliberate intent to kill is an essential element of a willful, premeditated first degree murder. *See* NMSA 1978, § 30–2–1(A)(1) (Repl.Pamp. 1984); NMSA 1978, UJI Crim. 2.00 (Repl. Pamp.1982). However, a showing of intoxication to a degree that would make the specific intent impossible is a valid defense to the charge. *State v. Crespin,* 86 N.M. 689, 526 P.2d 1282 (Ct.App.1974). Thus, UJI Crim. 41.10 tells the jury:

> *Evidence has been presented* that the defendant was intoxicated from the use of alcohol. *You* must determine whether or not the defendant was intoxicated, and if so, what effect this had on the defendant's ability to form the deliberate intention to take away the life of another.
>
> If the defendant was not capable of forming a deliberate intention to take the life of another, you must find him not guilty of a first degree murder by deliberate killing.

(Emphasis added.)

The order of this Court entered in connection with the Uniform Criminal Jury Instructions adopts the instructions and Use Notes and directs that they be used in criminal cases filed in district courts. *See* Order Adopting Uniform Jury Instructions for Criminal Cases, NMSA 1978, UJI Crim. at 4 (Repl.Pamp.1982); *see also State v. Scott,* 90 N.M. 256, 561 P.2d 1349 (Ct.App.), *cert. denied,* 90 N.M. 637, 567 P.2d 486 (1977), *overruled in part, State v. Reynolds,* 98 N.M. 527, 650 P.2d 811 (1982). The General Use Note states that "when a uniform instruction is provided for the elements of a crime [or] a *defense* * * * the uniform instruction *must* be used * * *." NMSA 1978, UJI Crim. General Use Note (Repl.Pamp.1982) (emphasis added). "Refusal or failure to follow the Supreme Court mandate on use of Uniform Jury Instructions is not a prerogative of the trial

court." *State v. Otto*, 98 N.M. 734, 735, 652 P.2d 756, 757 (Ct.App.1982) (citation omitted).

■ The Use Note for Instruction 41.10 directs that "[t]his instruction * * * *should immediately follow* Instruction 2.00 [Willful and Deliberate Murder] when the defendant has relied on the defense of 'diminished responsibility' or 'inability to form specific intent.'" (Emphasis added.) Thus, the requested instruction must be given if it is raised and supported by the evidence. *See State v. Williams*, 76 N.M. 578, 417 P.2d 62 (1966); *State v. Nelson*, 83 N.M. 269, 490 P.2d 1242 (Ct.App.), *cert. denied*, 83 N.M. 259, 490 P.2d 1232 (1971). This is true even if the instruction is contrary to the defendant's initial theory of the case. *Cf. State v. Benavidez*, 94 N.M. 706, 616 P.2d 419 (1980)(where defendant testified that his son had shot the victim, it was error to refuse a voluntary manslaughter instruction if there was evidence to support it.)

The jury heard considerable evidence relating to Mr. Privett's long-term alcoholism and his alcoholic condition during the hours surrounding his wife's death. Deputy Sheriff David Couch, who had had previous dealings with the Privetts, testified that when he arrived at the Privett home at about 10:20 a.m., Mr. Privett had a strong odor of alcohol on his breath and appeared "strongly intoxicated," even though he was able to answer questions and recognize people and surroundings. Deputy Couch placed Mr. Privett in protective custody because Mr. Privett appeared too intoxicated to take care of himself.

Couch further testified that the blood test done on Mr. Privett two hours later revealed an alcohol level of 0.18% which, according to Couch, was nearly twice the level required for issuance of a DWI citation. The parties stipulated that alcohol is normally eliminated from the bloodstream at a rate of 0.015% per hour.

Deputy Bobby Roybal, when asked whether he had seen any evidence that Mr. Privett had been drinking, replied "No, I did not smell anything." Roybal noted, however, that Privett became belligerent when asked to leave the house, and that two deputies, by continuing to talk to him, were able to put shoes on his feet and get him into the patrol car.

Mrs. Cosper's brother, Fred Netzel, testified that when he arrived at the Privett home at 10:00 a.m., Mr. Privett was drinking a can of beer and appeared "moderately intoxicated." Sheriff's officers found five empty beer cans and three empty whiskey bottles in the house. Defendant said that he had had "very little" to drink the night before but had consumed two beers between 12:00 midnight and 2:00 a.m., and four beers between 7:00 a.m. and 10:30 a.m., when he was taken into custody. He insisted that Mrs. Privett had drunk all three bottles of whiskey but he couldn't remember when or over what period of time.

Privett's testimony was generally vague and contradictory regarding dates, times and events during the five days up to and including the day of his wife's death. He contradicted the testimony of other witnesses and, on cross examination, repeatedly and gratuitously contradicted his own description of events he had testified to on direct. The jury could have inferred, from his testimony, that he was so intoxicated during the time surrounding his wife's death that he could not accurately remember what had happened.

There was evidence that Mr. Privett's conduct and emotional responses in the presence of witnesses on August 31, 1984, ranged from inappropriate to bizarre. When Mrs. Cosper first arrived at the Privett home about 8:15 in the morning, Mr. Privett told her to sit down because he had better prepare her for what she would see. He then began discussing a television set that he wanted to give Mrs. Cosper. During that conversation, Mrs. Privett called out from the bathroom. They found her there lying on the floor, but Mr. Privett made no effort to help his wife up off the floor until Mrs. Cosper told him he must do so. When Mrs. Cosper asked Mrs. Privett about the abrasions on her knees, defendant instead answered, "By God, I made her crawl."

Mr. Privett and Mrs. Cosper assisted Mrs. Privett into the bedroom. Upon reaching the bed, Mr. Privett simply sat down while retaining a grip on his wife's arm so that she was pulled into a position partly on and partly off the bed. He then "whopped her ... with his hand on her bare bottom," and said, 'You don't get off this bed no more today.'" He did not attempt to help her the rest of the way into bed until Mrs. Cosper insisted that he do so.

Mrs. Cosper returned to the Privett home at 10:00 a.m. because she "thought Privett was drunk and had beaten Allene up." She and others also testified that when Privett heard that his wife was dead, he expressed disbelief but displayed little emotion. He did not go into the bedroom to check her condition for himself and he later told law enforcement officers that he did not want to see his wife's body.

 From the evidence of Privett's conduct and other testimony, the jury was entitled to consider whether Privett was intoxicated and, if so, what its effect was on his state of mind. Compare the facts in *State v. Crespin*, 86 N.M. at 690, 526 P.2d at 1283. The defendant's mental state is a matter solely for the jury. *See State v. Nelson.* The trial court has a duty to instruct the jury on all questions of law essential for a conviction. NMSA 1978, Crim.P.R. 41(a) (Repl.Pamp.1985); *Jackson v. State*, 100 N.M. 487, 672 P.2d 660 (1983).

 We have held that to authorize an instruction on intoxication the record must contain some evidence showing or tending to show that defendant consumed an intoxicant and the intoxicant affected his mental state at or near the time of the homicide. *State v. Williams; accord State v. Luna*, 93 N.M. 773, 606 P.2d 183 (1980)(defendant not entitled to instruction where record devoid of any evidence that claimed intoxication rendered him incapable of acting purposefully). In deciding whether the instruction is proper, the trial court must not weigh the evidence, but must simply determine whether such evidence exists. *Cf. Poore v. State*, 94 N.M. 172, 173–74, 608 P.2d at 148, 149–50 (1980). The record

here contains such evidence. The dissent filed in the instant case rests upon absence of expert evidence regarding the effect of intoxication upon defendant's ability to form a deliberate intent to kill. The instruction does not require such expert evidence and, in fact, imposes on the jury the determination of the effect of intoxication. That is because, of course, it is well recognized that laymen are capable of assessing the effects of intoxication as a matter within their common knowledge and experience. *State v. Laffoon*, 125 Ariz. 484, 610 P.2d 1045 (1980).

This case is analagous to *Poore v. State* wherein the trial court was reversed for refusing a particular uniform instruction on the defense of the victim's negligence which had been promulgated for use with a more general instruction on vehicular homicide. Here, the trial court refused a particular instruction on the defense of intoxication promulgated for use with the general instruction on willful, deliberate murder. In *Poore*, we said:

> If under any reasonable hypothesis the instruction could have been of any benefit to the defendant when considered by a jury of lay persons, then defendant was harmed and prejudiced by the refusal to give it * * * * Emphasis within the instructions upon defendant's theory could only benefit defendant's case, especially in this case where the particular instruction 2.51 would follow the generalized instruction of 2.50.

> Just as a defendant in a criminal case is protected by the requirement of proof beyond a reasonable doubt * * * so also should the defendant be accorded some semblance of liberality in having the jury instructed with particularity as to his defenses that are supported by the evidence. Obviously, this is the reason for adopting both U.J.I.Crim. 2.50 and 2.51 *as law to be used together* instead of only U.J.I Crim. 2.50.

94 N.M. at 174, 608 P.2d at 150 (emphasis added).

The trial court's refusal to instruct the jury on the defense of intoxication was error. We therefore reverse and remand for a new trial.

SOSA, Senior Justice, and FEDERICI, J., concur.

RIORDAN, C.J. and STOWERS, J. dissent.

RIORDAN, Chief Justice and STOWERS, Justice (respectfully dissenting).

We respectfully dissent from the majority opinion. The majority states:

[T]hat to authorize an instruction on intoxication the record must contain some evidence showing or tending to show that defendant consumed an intoxicant *and* the intoxicant affected his mental state at or near the time of the homicide. (Emphasis added.)

However, the effect of the majority's holding is that an instruction on intoxication is now authorized where there is only evidence showing that defendant consumed an intoxicant. The requirement that there also be evidence that the intoxicant affected defendant's mental state is no longer necessary under the majority opinion.

As stated in the majority opinion, there was evidence that defendant had consumed large amounts of an intoxicant. With a blood alcohol level of 0.18%, the defendant must have been under the influence of alcohol at the time of the murder. However, we do not feel that evidence merely showing that defendant was drunk at the time of the commission of the murder is sufficient to warrant the giving of the instruction absent testimony to show what effect the alcohol had on defendant's ability to deliberate or to form the intent to take a life. U.J.I. 41.10 reads in pertinent part:

Evidence has been presented that the defendant was intoxicated from the use of alcohol. You must determine whether or not the defendant was [intoxicated] and if so, *what effect this had on the defendant's ability to form the deliberate intention to take away the life of another.* (Emphasis added).

In the instant case there was *no evidence* presented as to how a 0.18% blood alcohol level would affect a person's ability to form the deliberate intention to kill. The jury was merely given the fact of the 0.18% blood alcohol level and told that this level is almost twice the legal limit used in DWI cases. Without some expert evidence as to how such a high level of intoxication might have affected defendant's ability to form the deliberate intent to kill his wife, the jury was left to speculate on the issue and therefore the instruction is not appropriate.

The majority analogize the instant case with *Poore v. State,* 94 N.M. 172, 608 P.2d 148 (1980). However, the two cases are distinguishable. This court stated in *Poore:*

Just as a defendant in a criminal case is protected by the requirement of proof beyond a reasonable doubt as opposed to the preponderance of evidence in a civil case, so also should the defendant be accorded some semblance of liberality in having the jury instructed with particularlity as to his defenses *that are supported by the evidence.*

*Id.* at 174, 608 P.2d at 150 (Emphasis added.) The evidence in *Poore* supported the elements of the instruction. However, in the instant case the element of the instruction requiring the jury to determine the effect of intoxication on defendant's ability to form the deliberate intent to kill is *not* supported by the evidence. There is no evidence on this issue.

This case is similar to *State v. Lujan,* 94 N.M. 232, 234, 608 P.2d 1114, 1116 (1980), where in this court stated:

[U]nless there is evidence that the defendant could not have formed the requisite intent, the diminished responsibility instruction is improper.

*See also State v. Luna,* 93 N.M. 773, 606 P.2d 183 (1980) (defendant not entitled to instruction where record did not contain any evidence that defendant's intoxication rendered him incapable of acting purposefully).

By holding as it does the majority is disregarding established case law and the requirements of U.J.I. 41.10.

We therefore dissent.