168 P.3d 756 (2007)
2007-NMCA-131
STATE of New Mexico, Plaintiff-Appellee,
v.
Stephen NOZIE, Defendant-Appellant.
No. 25,481.
Court of Appeals of New Mexico.
August 7, 2007.
Certiorari Granted September 25, 2007.
*757 Gary K. King, Attorney General, Santa Fe, NM, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellee.
John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellant.
Certiorari Granted, No. 30,620, September 25, 2007.

OPINION
ALARID, Judge.
{1} Defendant-Appellant, Stephen Nozie, appeals his conviction for aggravated battery on a peace officer. We are persuaded by Defendant's arguments that the district court erred in denying Defendant's requested jury instructions on mistake and the lesser-included offense of battery and that the denial of these instructions was not harmless error. Accordingly, we reverse Defendant's conviction for aggravated battery on a peace officer and remand for a new trial.
DISCUSSION
Instruction on Mistake
{2} In Rutledge v. Fort, 104 N.M. 7, 715 P.2d 455 (1986), a proceeding on a petition for a writ of superintending control brought by the prosecutor, the Supreme Court construed the statutes defining the offenses of aggravated assault upon a peace officer and battery upon a peace officer. The Supreme Court addressed the question of whether these statutes require the State to prove that the defendant knew that the victim was a peace officer. A three-justice majority of the Supreme Court concluded that proof of the defendant's knowledge of the victim's status as a peace officer is not required to obtain a conviction for aggravated assault upon a peace officer or battery upon a peace officer, reasoning that imposing a knowledge requirement would be equivalent to adding an additional element to the offenses as defined by the Legislature. Id. at 9, 715 P.2d at 457. Justices Walters and Sosa dissented. Id. at 10, 715 P.2d at 458. Thereafter, the defendant was convicted of aggravated assault upon a peace officer under jury instructions that imposed strict liability on the defendant *758 with respect to the victim's status as a peace officer as required by Rutledge. Reese v. State, 106 N.M. 498, 745 P.2d 1146 (1987). On the defendant's appeal from the conviction, we affirmed, applying the law as settled by Rutledge. Reese, 106 N.M. at 499, 745 P.2d at 1147. The defendant petitioned for certiorari. A three-justice majority reversed, the prior decision in Rutledge notwithstanding.[1] Justices Sosa and Walters, the two justices who had dissented in Rutledge, held that as a matter of due process of law the defendant's knowledge that the victim was a peace officer was a necessary element of the offense of aggravated assault on a peace officer. Reese, 106 N.M. at 501, 745 P.2d at 1149. Justice Ransom, who had joined the Supreme Court after Rutledge was decided, provided the third vote in favor of overruling Rutledge. Justice Ransom would have imposed as a matter of statutory construction a requirement that the defendant have had knowledge of the victim's status as a peace officer. Id. at 501-03, 745 P.2d at 1149-51 (Ransom, J., specially concurring).
{3} Subsequent to Reese, the Supreme Court promulgated a uniform jury instruction that addresses the defendant's ignorance or mistake as to the victim's status as a peace officer. UJI 14-2216 NMRA. Although this instruction appears to have been drafted in response to Reese, the instruction is not tailored specifically to aggravated assault upon a peace officer or battery on a peace officer, the particular offenses at issue in Rutledge and Reese, and Use Note 1 to UJI 14-2216 states, without limitation to any offense, that "[t]his instruction is to be given if there is a question of fact as to whether or not the defendant knew that the victim was a law enforcement officer." Moreover, the two alternate rationales relied on by the three Justices who held in Reese that the defendant was entitled to an instruction on mistake apply with equal force to aggravated battery on a peace officer. We therefore hold that when there is a question of fact as to whether the defendant knew the victim was a peace officer, UJI 14-2216 applies to the offense of aggravated battery on a peace officer, NMSA 1978, § 30-22-25 (1971).
{4} The State argues that UJI 14-2216 should be given only when the defendant's mistake as to the victim's status as a police officer is a complete defense to criminal liability, as for example where the defendant "lacked criminal intent because he honestly and reasonably believed himself the victim of a crime or intentional tort being perpetrated by a private citizen, and [the defendant] used no more than reasonable force to repel the attack, or fled to avoid having to use force." We reject the State's proposed limitation on the use of UJI 14-2216. Because an assault or battery against a peace officer cannot be accomplished without assaulting or battering "another," State v. Kraul, 90 N.M. 314, 317, 563 P.2d 108, 111 (Ct.App.1977) (observing that "[o]ne cannot batter a peace officer while in the lawful discharge of his duties without battering the person of another"), a number of the various assaults or batteries defined in Article 3 of the Criminal Code are "included" offenses of parallel offenses against peace officers defined in Article 22 of the Criminal Code, see id. (characterizing simple battery as an "included" offense of battery on a peace officer); compare, e.g., NMSA 1978, § 30-3-4 (1963) (defining battery, a petty misdemeanor) with NMSA 1978 § 30-22-24 (1971) (defining battery upon a peace officer, a fourth degree felony). UJI 14-2216 is written in a traditional "step down" format. UJI 14-2216 requires the jury first to consider whether the defendant is guilty of an offense against a peace officer. UJI 14-2216 requires the jury to acquit the defendant of the offense against a peace officer if the jury has a reasonable doubt as to whether the defendant knew the victim was a peace officer. If the jury acquits the defendant due to a mistake as to the victim's status as a peace officer, UJI 14-2216 requires the jury to consider the parallel lesser-included offense not involving a peace officer as the victim. This step down format would not be necessary if, as the State argues, the Supreme Court intended a mistake instruction to be available only when mistake *759 is a complete defense to any criminal liability.
{5} In the present case, Defendant tendered an instruction conforming to UJI 14-2216. Having tendered a legally proper instruction, Defendant was entitled to that instruction if the record contained substantial evidence supporting the factual elements of his defense. See State v. Mantelli, 2002-NMCA-033, ¶ 16, 131 N.M. 692, 42 P.3d 272. The prosecutor argued, and the district court agreed, that Defendant was not entitled to an instruction on mistake because there was no testimony directly establishing that Defendant did not know that the person he attacked was a peace officer.
{6} "`As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.'" State v. Gaines, 2001-NMSC-036, ¶ 6, 131 N.M. 347, 36 P.3d 438 (quoting Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)). "A defendant is entitled to have the jury instructed on his theories of the case if that [sic] theory is supported by the evidence." State v. Bunce, 116 N.M. 284, 287, 861 P.2d 965, 968 (1993). We are satisfied that the record contains substantial evidence supporting an instruction on Defendant's ignorance or mistake as to the victim's status as a peace officer.
{7} The jury was presented with evidence of the following circumstances: Defendant and his wife, Philipita, had been drinking throughout the day and early evening. They were joined by Philipita's sister, Oleta, who was driving her car. Oleta drove Defendant and Philipita to a supermarket. Defendant and Philipita got out of the car and began fighting. A male security guard intervened. The guard was wearing a uniform with black slacks and a gray shirt with a badge and patches identifying him as a security guard. Defendant grabbed the guard's shirt. In the ensuing struggle, the guard struck Defendant in the head and face three to five times with his fist. While Defendant was lying on the ground, Philipita and Oleta kicked Defendant in the head until the guard stopped them. Defendant got up and wandered into a vacant lot located across the street from the supermarket. Defendant's BAC was close to a black-out level. Defendant also had elevated blood sugar, a condition that can cause blurred vision.
{8} The victim, Lt. Craig Meo of the Gallup Police Department, arrived in response to a report of a domestic disturbance. Lt. Meo was wearing a uniform with black pants and a black jacket with insignia on the shoulders. Lt. Meo parked his car in front of the lot without engaging his emergency lights. Lt. Meo got out of the car and followed Defendant into the vacant lot. It was approximately 10:00 p.m. on a March evening, and the light in the lot came from lights at an adjacent car dealership. Lt. Meo turned off his belt radio and jogged toward Defendant. Lt. Meo did not identify himself as a police officer due to his concern that Defendant would flee if Defendant realized that a police officer was approaching. When Lt. Meo caught up with Defendant, the two men were about ten to fifteen feet apart. Lt. Meo made a come here gesture with his hand. Defendant walked toward Lt. Meo. Lt. Meo turned so that his gun was on the side opposite Defendant, and the two men began walking back toward Lt. Meo's car.
{9} Without warning, Defendant hit Lt. Meo in the eye with his fist. Defendant then punched Lt. Meo in the nose. As Lt. Meo fought back, he slipped and fell on his back. Defendant straddled Lt. Meo, "head-butting" Lt. Meo three times. Lt. Meo suffered a broken nose, a gash above his eye, one lost tooth, and two chipped teeth. Lt. Meo, now afraid for his life, drew his handgun and shot Defendant, wounding him in the chest. Defendant went limp, falling on Lt. Meo's chest.
{10} We are satisfied that a reasonable jury could have found that Defendant was in a dazed, disoriented, and intoxicated state and that, in this state, he believed that the person he attacked in the lot was the private security guard who had followed him into the field from the supermarket parking lot. Defendant's theory of ignorance or mistake was supported by the State's own witnesses and, contrary to the argument of the prosecutor, did not depend upon Defendant taking the *760 stand to directly deny knowledge. See Mantelli, 2002-NMCA-033, ¶ 16, 131 N.M. 692, 42 P.3d 272 (observing that the State's evidence may support an instruction requested by the defendant); State v. Castañeda, 2001-NMCA-052, ¶ 21, 130 N.M. 679, 30 P.3d 368 (noting general rule that a defendant's state of mind may be proved by circumstantial evidence). That there are views of the evidence that support a finding adverse to Defendant is not a reason for denying Defendant an instruction so long as the evidence viewed most favorably to Defendant supported Defendant's theory of the case.
{11} We are not persuaded by the State's argument that the instructions on intent adequately address Defendant's state of mind with respect to the victim's status as a peace officer. The victim's status as a peace officer is an "attendant circumstance." 1 Wayne R. LaFave, Substantive Criminal Law § 5.1 at 332 (2d ed.2003) (observing that "[i]t is commonly stated that a crime consists of both a physical part and a mental part . . . and sometimes also . . . prescribed attendant circumstances"). The attendant circumstance of the victim's status as a peace officer in the lawful exercise of his duties distinguishes felony aggravated battery on a peace officer from misdemeanor aggravated battery. Compare Section 30-22-25(B) with NMSA 1978, § 30-3-5(B) (1969). As a majority of the Supreme Court recognized in Reese in the closely related context of the offenses of aggravated assault on a peace officer and battery on a peace officer, a mens rea requirement of knowledge attaches to the attendant circumstance of the victim's status as a peace officer. 106 N.M. at 501, 745 P.2d at 1149. The instruction on general criminal intent, UJI 14-141 NMRA, focuses on the state of mind attaching to a defendant's act (touching or applying force); the instruction on specific intent, paragraph 3 of UJI 14-2214 NMRA focuses on a defendant's state of mind with respect to the consequence of a defendant's act (injury to the victim). Neither of these UJIs directly addresses the defendant's state of mind with respect to the attendant circumstance of the victim's status as a peace officer. Paragraph 6 of UJI 14-2214 merely requires the jury to find that the victim was a peace officer in the performance of his duties; it does not address the defendant's state of mind with respect to the victim's status. We must bear in mind that the function of instructions is to assist the members of the jury, who are likely to have a limited knowledge of substantive criminal law, in understanding and applying the law. See UJI 14-123 NMRA (requiring jurors to affirm that they will arrive at a verdict "according to . . . the law as contained in the instructions of the court"). Without UJI 14-2216, a lay jury would not fully appreciate the legal significance of the defendant's ignorance or mistake as to the victim's status as a peace officer. Because UJI 14-2216 is specially tailored to the defense theory of ignorance/mistake with respect to the victim's status as a peace officer, when UJI 14-2216 is given we perceive no need to give UJI 14-5120 NMRA, the general instruction on ignorance or mistake of fact. See Bunce, 116 N.M. at 287, 861 P.2d at 968 (observing that a trial court is not required to give duplicative instructions).
Other Requested Instructions
{12} Defendant also was entitled to an instruction on battery, UJI 14-320 NMRA. For purposes of jury instructions, battery is a lesser included offense of aggravated battery on a peace officer. Kraul, 90 N.M. at 317, 563 P.2d at 111. The district court instructed the jury on the question of Defendant's inability to form the specific intent to injure, UJI 14-5111 NMRA, indicating that the district court recognized that there was sufficient evidence of intoxication to support this defense. If the jury found that Defendant was unable to form the specific intent to injure, it still could have found that Defendant was able to form the general criminal intent necessary to commit battery. See State v. Crespin, 86 N.M. 689, 691, 526 P.2d 1282, 1284 (Ct.App.1974) (observing that voluntary intoxication is not a defense to a "nonspecific" intent crime); State v. Duran, 80 N.M. 406, 407, 456 P.2d 880, 881 (Ct.App. 1969) (distinguishing the intent to apply force required to commit battery from the intent to injure required to commit aggravated battery). If the jury found both that Defendant was mistaken as to the victim's status as a *761 peace officer and that Defendant was unable to form the specific intent to injure, it could have found Defendant guilty of battery. The district court should have instructed the jury on the offense of battery as requested by Defendant.
{13} Citing State v. Gonzales, 97 N.M. 607, 642 P.2d 210 (Ct.App.1982), Defendant argues that in view of evidence that Lt. Meo resorted to deadly force, Defendant was entitled to an instruction on whether Lt. Meo was acting within the scope of his duties, UJI 14-2214 Use Note 6. We agree with the State that this argument ignores the chronology of events. At the time that Defendant attacked Lt. Meo, Lt. Meo had not used any force, much less excessive force. Lt. Meo's use of deadly force was in response to Defendant's violent attack. Defendant's case is clearly distinguishable from Gonzales, where it was undisputed that the officer, not the defendant, struck the first blow. 97 N.M. at 610, 642 P.2d at 213.
{14} We also agree with the State that Defendant was not entitled to an instruction on self-defense. The facts as summarized in Defendant's Brief-in-Chief clearly demonstrate that Lt. Meo confronted Defendant in a non-threatening manner:
When he caught up to [Defendant], about 10-15 feet separated the men. [Lt.] Meo gestured in silence to [Defendant] with his hand for [Defendant] to come toward him. [Defendant] responded to the gesture and walked toward [Lt.] Meo. [Lt.] Meo turned so his gun was on his hip opposite to [Defendant], and then fell in step with [Defendant]. . . . They commenced to walk in step, abreast, in the dark, back toward [Lt.] Meo's car in this "escort" position.
Even if Defendant believed that he was being confronted by the security guard with whom he had previously struggled, no reasonable jury could have found on the evidence before it that at the point in time that Defendant attacked Lt. Meo there was "an appearance of immediate danger of bodily harm," that the force used by Defendant was "reasonable and necessary," or that a reasonable person in the same circumstances would have acted as Defendant did. UJI 14-5181 NMRA; cf. Gonzales, 97 N.M. at 609, 642 P.2d at 212 (emphasizing evidence that the defendant fought back after the officer struck the defendant in the face). Because Defendant failed to put self defense in issue, we also reject his claim that he was entitled to a related instruction on retreat, UJI 14-5190 NMRA.
CONCLUSION
{15} We reverse Defendant's aggravated battery on a peace officer conviction and remand for a new trial in which the jury is given instructions consistent with this opinion.
{16} IT IS SO ORDERED.
WE CONCUR: LYNN PICKARD and CELIA FOY CASTILLO, Judges.
NOTES
[1] Reese arose out of the same criminal prosecution that was the subject of the writ proceeding in Rutledge. Reese v. State, 106 N.M. 505, 745 P.2d 1153 (1987) (opinion on rehearing).