This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39233**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JACOB D. BROWN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Hector H. Balderas, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}**    Defendant Jacob Brown appeals his convictions for great bodily injury by vehicle (reckless driving) in violation of NMSA 1978, Section 66-8-101(B) (2016), leaving the scene of an accident (great bodily harm or death) in violation of NMSA 1978, Section 66-7-201 (1989), and reckless driving in violation of NMSA 1978, Section 66-8-113 (1987). On appeal, Defendant presents five issues: (1) the district court committed reversible error by denying Defendant's request that the jury be instructed on proximate cause in accordance with UJI 14-134 NMRA; (2) the district court committed plain error by admitting lapel camera footage of a witness's statement because that witness was

not qualified as an expert; (3) his constitutional right to the reasonably effective assistance of counsel was violated because trial counsel failed to request an instruction on the defense of duress to the charge of leaving the scene of an accident when duress was the only available defense to that charge on the facts of this case; (4) his conviction for reckless driving must be vacated because his convictions for both great bodily harm by vehicle (reckless driving) and reckless driving violate double jeopardy; and (5) the district court failed to make findings required to support its designation of Defendant's conviction for great bodily harm by vehicle (reckless driving) as a serious violent offense, *see generally State v. Branch*, 2018-NMCA-031, ¶¶ 55-59, 417 P.3d 1141, and this case must therefore be remanded for the district court to make a supported determination of the issue.

**{2}** We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion. First, because a reasonable jury could have found from the evidence presented that Defendant's reckless driving was not the proximate cause of the great bodily injury suffered by the victim in this case, we agree with Defendant that the district court committed reversible error by refusing Defendant's request that the jury be instructed on proximate cause consistent with UJI 14-134. Second, we conclude that, even if admission of the lapel camera footage of the witness's statement was error, that error does not require reversal of Defendant's conviction for reckless driving because it does not create "grave doubts concerning the validity of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted). Third, we decline to reach the merits of Defendant's argument that his trial counsel was ineffective in failing to request a jury instruction on the defense of duress because the argument is insufficiently developed with respect to whether Defendant was prejudiced by his counsel's allegedly deficient performance. We also decline to reach Defendant's fourth claim of error. The State concedes that the findings supporting the district court's designation of Defendant's conviction for great bodily injury by reckless driving as a serious violent offense are deficient. However, we will not assume that the district court will make a similarly pro forma finding if Defendant is convicted on remand and the crime is again designated a serious violent offense following a new trial. As for Defendant's fifth claim of error, the issue of double jeopardy will arise again if Defendant is convicted of great bodily injury by vehicle (reckless driving) on retrial, and we therefore express our agreement with the State's concession that Defendant's convictions for both reckless driving and great bodily injury by vehicle violate the constitutional prohibition of double jeopardy. *See State v. Porter*, 2020-NMSC-020, ¶ 20, 476 P.3d 1201.

**I.  The District Court's Denial of Defendant's Request to Instruct the Jury in Accordance With UJI 14-134 Was Reversible Error**

**{3}** The charges in this case arise from an incident involving several people on bicycles and a car driven by Defendant. The following facts are undisputed. Defendant encountered a single-file group of cyclists traveling in the same direction as him while driving on a two-lane highway with no shoulder. As Defendant drove past, there was some form of exchange between him and the cyclists—either verbal or gestural—and

Defendant subsequently stopped his car and reversed toward the cyclists. During the incident and for uncertain reasons, the second cyclist in the line (the victim) lost control of and crashed his bicycle, fell, and was severely injured.

{4}     The evidence at trial was in conflict as to how the injuries occurred. Several witnesses testified that Defendant *hit* the victim with his moving car. The lead rider did not see whether the victim hit or was hit by Defendant's car, but the lead rider testified that the victim had run *into him* when he had applied his brakes while trying to go around Defendant's car on the edge of the pavement. An accident reconstructionist opined that the accident could have happened with or without contact between Defendant's car and the victim's bicycle. The reconstructionist also testified that, in his opinion, the victim's injuries occurred when the victim either had a "glancing" collision with Defendant's vehicle or went "off the roadway and kind of got stuck in the dirt" after trying "to make a maneuver to avoid the vehicle," which "was either travelling at five miles per hour or . . . *parked stationary in the roadway.*"

{5}     The version of events most clearly favorable to Defendant was presented to the jury in the form of lapel camera video footage of an on-scene statement Defendant gave to the police admitted as a trial exhibit. In that video, Defendant stated that, because one of the cyclists had flipped him off after he passed them, he had stopped his car, backed up, parked, and rolled his window down to "confront the situation," leaving the cyclists "room on the side" to pass his car. According to Defendant, after one of the cyclists stopped next to his car, others—riding behind that cyclist—"just started fucking tumbling," and Defendant suggested that this occurred because the cyclists were not "paying attention." Later in the video, Defendant stated that he "absolutely did not hit anybody" and it was "kind of blowing [his] mind that all those guys were tumbling" when he had given the cyclists "plenty of room on the right."

{6}     Following the close of the evidence, defense counsel requested that the district court instruct the jury in conformity with UJI 14-134, which provides in pertinent part that the jury may only return a guilty verdict if it finds beyond a reasonable doubt that a defendant's conduct was the proximate cause of the injury or harm suffered by the victim. Specifically, when so instructed, the jury must find that "[t]he injury or harm was the foreseeable result of the defendant's act" and that "[t]he act of the defendant was a significant cause of the injury or harm." *Id.*. The instruction specifies that "[t]he defendant's act was a significant cause of the injury or harm if it was an act which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the injury or harm and without which the injury or harm would not have occurred." *Id.* The State opposed defense counsel's request, arguing that proximate causation was not in issue because, on the evidence presented, Defendant's reckless driving was the proximate cause of the victim's injuries regardless of whether Defendant "drove into" the cyclists or "stopped abruptly in front of them" and caused them to either collide with his car or to "deviate from their path and fall." Defense counsel responded that there was "a problem" as to proximate causation because the evidence showed that the lead rider had been able to stop while the victim "failed to stop and hit him."

**{7}** The district court disagreed and refused to give the instruction. In the court's view, it did not matter whether the victim's injuries were caused by "the first [cyclist] getting out of the way and the second [cyclist] striking the vehicle or [by] the stricken [cyclist] going down because he couldn't respond quick enough" because, either way, Defendant's "activity . . . [had] caused the accident." Consequently, the court instructed the jury that, to return a verdict of guilty on the charge of great bodily harm by vehicle, it had to find only that Defendant's "reckless driving caused the great bodily injury" to the victim.

**{8}** On appeal, Defendant contends that the court committed reversible error in denying his requested instruction. "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. When the issue is preserved, we review for reversible error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. It is reversible error to refuse an instruction on a defendant's theory of the case if the evidence, viewed in the light most favorable to giving the instruction, *State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113, is "sufficient to justify a reasonable jury determination as to [the] element . . . under consideration." *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170 (internal quotation marks and citation omitted). We conclude, for the reasons explained below, that a reasonable jury could have found, on the evidence presented, that Defendant's reckless driving was not the proximate cause of the victim's severe injuries, and that the district court committed reversible error by refusing Defendant's requested instruction.

**{9}** To obtain a conviction for a crime "defined in such a way that the occurrence of a certain specific result of conduct is required for its commission," the State must prove that a defendant's conduct was both the factual cause and the proximate cause of that result. 1 Wayne R. LaFave, *Substantive Criminal Law* § 6.4(a) (3d ed. 2022); *see also State v. Montoya*, 2003-NMSC-004, ¶ 22 n.1, 133 N.M. 84, 61 P.3d 793 (noting "the general requirement in criminal law that a defendant's act will only be considered a cause of death when it is recognized by the law as both a factual cause and proximate cause of death"). Where the jury could reasonably find that the negligence of another person was a cause of an injury also caused by the defendant's conduct, that negligence should be considered by the jury in determining whether the defendant's conduct was the proximate cause of the injury, and the court must instruct the jury accordingly. *See Poore v. State*, 1980-NMSC-035, ¶¶ 6-13, 94 N.M. 172, 608 P.2d 148 (reversing a conviction for vehicular homicide due to instructional error on the issue of proximate cause because the jury could reasonably have determined that another person's negligence in crossing the street was "the only cause" of the decedent's death); *see also State v. Privett*, 1986-NMSC-025, ¶ 21, 104 N.M. 79, 717 P.2d 55 (stating that, in *Poore*, 1980-NMSC-035, "the trial court was reversed for refusing a particular uniform instruction on *the defense of the victim's negligence* which had been promulgated for use with a more general instruction on vehicular homicide" (emphasis added)); *State v. Sisneros*, 1938-NMSC-049, ¶ 31, 42 N.M. 500, 82 P.2d 274 (indicating in dictum that, in a vehicular homicide case, the victim's asserted negligence "should have been taken into consideration by the jury in determining the proximate cause of

the death," but ultimately reversing because there was insufficient evidence to prove that the defendant acted with criminal negligence), *cited by State v. Finch*, No. 30,706, mem. op. at *3 (N.M. Ct. App. Oct. 30, 2012) (nonprecedential).

**{10}** The State attempts to distinguish *Poore* by contending that *Poore* "involved a homicide charge which has its own set of jury instructions that includes a required definitional instruction for proximate cause," *see* UJI 14-251, -252 NMRA, and that those instructions "do not apply if the charge is not for homicide." We are not persuaded that *Poore* is distinguishable on this basis. The crime of great bodily injury by vehicle, like the various homicide crimes, is an offense that cannot be proven unless the state demonstrates that the defendant proximately caused a result—the result of great bodily injury in cases where the charge is great bodily injury by vehicle, and the death of a human being in homicide cases. *Poore*'s basic holding—that a defendant is entitled to an instruction on the issue of proximate cause if there is a view of the evidence under which a reasonable jury could find that, because of an alleged victim's negligence, the defendant's conduct is not the proximate cause of the proscribed result—is an application of the general principle of proximate causation, rather than a rule unique to the homicide context. *See State v. Simpson*, 1993-NMSC-073, ¶ 14, 116 N.M. 768, 867 P.2d 1150 (stating that the general principle of proximate causation in criminal law requires the state to prove that a proscribed result is "the natural and probable consequence of" the defendant's conduct and that "[t]he conduct of other parties is relevant only if it is a superseding cause that negates the defendant's conduct" (internal quotation marks and citation omitted)). And while we agree with the State that the Uniform Jury Instructions applicable to homicide cases do not apply in nonhomicide cases, the instruction Defendant requested was promulgated specifically for use in non-homicide cases. *See* UJI 14-134, use note 1 ("This instruction should be used in cases in which causation is an issue. It is not to be used in homicide cases.").

**{11}** We conclude that the district court erred by denying Defendant's request to instruct the jury on the concept of proximate cause in accordance with UJI 14-134. On the evidence presented, the jury could rationally have found that, even if Defendant's reckless driving was the factual cause of the victim's injuries, it was not the proximate cause. In the lapel camera footage, Defendant stated that he rolled down his window after stopping his car, and that it was not until after the front cyclist stopped and as he was doing so that other cyclists started "tumbling." The jury could rationally have found from this evidence that, even though Defendant was initially reckless[1] in putting his car in reverse and driving towards the cyclists, he stopped his car at a point which gave the victim time and space to pass his vehicle or to come to a safe stop. On this view, the victim's failure to come to a safe stop, whether as a result of inattention or other

---

[1] The jury found beyond a reasonable doubt that Defendant "operated a motor vehicle in a reckless manner," which the given instructions defined as "dr[iving] with willful disregard of the safety of others and at a speed or in a manner that endangered or was likely to endanger any person." The instructions thus required the jury to find at least a "likeli[hood] of endanger[ment]" before it could convict, and the verdict returned demonstrates that the jury made that finding. However, the definition of recklessness in the given instructions required no jury finding as to the connection between Defendant's conduct and the victim's injuries, the result proscribed by law: a defendant may be convicted of reckless driving (as Defendant separately was) even if no harm at all results.

negligence, could reasonably have been found to be "an outside event" interrupting the "natural and continuous chain of events" that would otherwise have ended without great bodily injury to the victim. UJI 14-134. Whether the victim "couldn't respond quick[ly] enough" to stop or, conversely, the victim could and would in the ordinary course of events have been expected to safely stop was an issue fairly raised by the evidence. Resolving that issue was the province of the jury, but the given instructions did not require the jury to resolve it: no instruction informed the jury that it could not convict Defendant if he was "only at fault to an insignificant extent." *Simpson*, 1993-NMSC-073, ¶ 13. Accordingly, we conclude that the district court's refusal of Defendant's requested proximate causation instruction, UJI 14-134, was reversible error, and therefore we reverse Defendant's conviction for great bodily injury by vehicle (reckless driving), and remand for a new trial on that charge.

## II. The District Court's Admission of the Lapel Camera Footage Was Not Plain Error That Requires the Reversal of Defendant's Conviction for Reckless Driving

**{12}** Defendant also contends that the district court committed plain error by admitting video footage of the victim's statement to police when the police picked up the victim's bicycle from his home roughly two months after he was injured. In that footage, after saying that a part of the bicycle was twisted, the victim stated that he could run "as fast as [he] could straight into a wall [with the bicycle] and not be able to do that" and that it "takes several thousand-foot-pounds of torque to twist aluminum like that." Before this Court, Defendant contends that this evidence was inadmissible under Rules 11-701 and 11-702 NMRA because the victim was not qualified to give an expert opinion on the amount of force it would have taken to twist the bicycle's frame. We conclude that, even assuming the district court erred by failing to sua sponte ensure that this portion of the video footage was not considered by the jury, admission of the victim's statements does not rise to the level of plain error because it does not create "grave doubts concerning the validity of the verdict." *Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted).

**{13}** The challenged statement was of—at most—marginal benefit to the State's case. To be sure, the jury could have interpreted the victim's statement as evidence that Defendant hit the victim with his car because that was the only explanation for the damage to the bicycle. And if the jury found that Defendant did, in fact, hit the victim with his car, it might have found it a simple matter to conclude that Defendant was reckless. But even if the jury interpreted the challenged statement in this way and relied upon it in assessing Defendant's recklessness, the statement was nowhere near the "most authoritative" basis for a finding of recklessness presented. *State v. Vargas*, 2016-NMCA-038, ¶ 25, 368 P.3d 1232. At trial, several eyewitnesses—including the victim—testified that Defendant hit the victim with his moving car. The victim testified that Defendant "swerved directly into [him], . . . struck [him], [and] knocked the bike out from under [him]," and caused him to "fl[y] up in the air and forward, and land[] on [his] right side." We think that the jury, if it believed this testimony, would have concluded that Defendant was reckless, and we think it implausible that the jury would have disbelieved

the victim's in-court testimony while simultaneously crediting the challenged statement. So the challenged statement was cumulative evidence: it added little to the State's efforts to prove recklessness. Moreover, although the video was admitted as an exhibit, the jury's exposure to the video footage of the statement was an isolated event in the course of a three-day trial, and, the State did not emphasize or expressly rely on the statement as a ground for finding Defendant guilty. To the contrary, in closing argument, the State actively encouraged the jury to "ignore" evidence regarding the damage done to the bicycle and to decide the case on the basis of other evidence. On the facts of this case, we cannot conclude that there is any significant likelihood the challenged statement contributed to the jury's verdict. Accordingly, we conclude Defendant has failed to show that the district court committed plain error and affirm Defendant's conviction for reckless driving.

### III. Defendant's Argument Regarding Ineffective Assistance of Counsel Is Underdeveloped

**{14}** Lastly, we briefly discuss Defendant's challenge to his conviction for leaving the scene of an accident (great bodily injury). Defendant contends that he received ineffective assistance of counsel because his attorney at trial failed to request that the jury be instructed on the defense of duress. "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Crocco*, 2014-NMSC-016, ¶ 12, 327 P.3d 1068 (internal quotation marks and citation omitted). Here, we conclude that Defendant has inadequately developed his argument that he was prejudiced by trial counsel's purportedly deficient performance, and we therefore decline to reach it. *See generally Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments.").

**{15}** Defendant's argument is underdeveloped because it fails to address an important nuance of the law of duress as it relates to strict liability crimes in New Mexico. This much is clear: A defendant who is charged with committing a strict liability crime may raise the defense of duress only if the defendant was not put "in a position that compelled [the defendant] to violate the law due to [the defendant's] own recklessness." UJI 14-5130 NMRA; *see State v. Rios*, 1999-NMCA-069, ¶¶ 16-17, 127 N.M. 334, 980 P.2d 1068. However, there is an unanswered question relevant to the present case. Our appellate courts have not yet resolved whether the crime of leaving the scene of an accident is a true strict liability crime—i.e., whether a defendant can be convicted of leaving the scene of an "accident" (a term with "a broader meaning than 'collision'") even though the defendant is entirely unaware that an accident has occurred. *State v. Hertzog*, 2020-NMCA-031, ¶ 18, 464 P.3d 1090; *see id.* ¶ 9 n.2 (finding it unnecessary to address the issue in a case where the jury was instructed that it had to find knowledge of an accident in order to find the defendant guilty). Regardless of how this classificatory issue is ultimately resolved, leaving the scene may nevertheless be "a crime closely approaching a strict liability crime"—to a degree that mandates analysis

under the modified duress framework applicable to true strict liability offenses. *State v. Baca*, 1992-NMSC-055, ¶ 16, 114 N.M. 668, 845 P.2d 762 (discussing the crime of possession of a deadly weapon by a prisoner—another "near strict liability crime" in New Mexico). If this is so, then defense counsel's allegedly deficient performance in failing to request a duress instruction could not have prejudiced Defendant. The jury found that Defendant committed the crime of reckless driving, and we have affirmed Defendant's conviction for that offense, and thus Defendant's own recklessness was the reason he found himself in a position in which he was arguably compelled to violate the law. As a result—hypothetically—he could have no recourse to a duress defense under New Mexico law.

**{16}** But our appellate courts have never addressed whether the modified duress framework applies to the offense of leaving the scene of an accident. And although UJI 14-5130 itself indicates that the instruction must be modified in cases involving strict liability crimes, the briefs presented to us say nothing about whether leaving the scene is a strict liability crime or close enough to one that the analysis that applies in strict liability cases should govern. We decline to weigh in on either issue of first impression in this direct appeal. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). As Defendant recognizes, he "may be afforded relief, [if] appropriate, in a habeas corpus proceeding"—the "normal[]" forum for addressing claims of ineffective assistance of counsel. *Crocco*, 2014-NMSC-016, ¶ 13.

**CONCLUSION**

**{17}** For the reasons stated, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

**{18} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**